[Crim. No. 318.     Second Appellate District.—May 23, 1914.]

# THE PEOPLE, Respondent, v. ELIJAH FRANKLIN KISER, Appellant.

CRIMINAL LAW—HOMICIDE—EXCLUSION OF EVIDENCE—WHETHER RE-
VERSIBLE ERROR.—In this prosecution for a homicide wherein it
appears that the defendant, during an altercation with the man for
whose killing he is prosecuted, shot such man and also his own wife,
the court committed no prejudicial error in the exclusion of testi-
mony, and the evidence is sufficient to sustain a conviction of murder
in the second degree.

ID.—CIRCUMSTANTIAL EVIDENCE—WHETHER MAY OVERCOME DIRECT TES-
TIMONY.—Circumstantial evidence disproving the direct statements
of the accused may be such that the jury is not obliged to believe
him.

ID.—CROSS-EXAMINATION OF WITNESSES—RIGHT TO BRING OUT RE-
MAINDER OF CONVERSATION.—The rule that where part of a conver-
sation has been shown in testimony the remainder thereof may be
brought out by the opposing party on cross-examination, is subject
to the qualification that the court may exclude those portions of the
conversation not relevant to the items thereof which have been
introduced.

ID.—ERROR IN CROSS-EXAMINATION—RECORD—REVIEW ON APPEAL.—A
party claiming that the court has erred in its exercise of discretion
as to such a matter of cross-examination must show by the record
some definite and legal purpose in the asking of the excluded ques-
tion. In the case at bar an examination of the questions and
answers which had been admitted on cross-examination, shows that
they covered the topics of the direct examination very fully, and
that the excluded questions, so far as not included in other admitted
questions, were upon immaterial matters.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—ASSIGNMENT OF ERROR—
REVIEW ON APPEAL.—If no assignment of misconduct of the district
attorney is made at the time of its occurrence, the misconduct will
not be considered on appeal.

ID.—DOCTRINE OF REASONABLE DOUBT—REFUSAL OF INSTRUCTION CON-
CERNING—HARMLESS ERROR.—A refusal to instruct the jury that
"if any one, or any member, of you, after deliberating on and con-
sidering all the evidence in this case, shall be of the opinion that
the defendant has not been proved to be guilty to a moral certainty
and beyond a reasonable doubt, those of you entertaining such opin-
ion should vote in favor of acquittal, and should so adhere to your
opinion until convinced to a moral certainty and beyond a reasonable

doubt of the guilt of the defendant of the alleged crime by and from the evidence and the law alone in this case," if error, is without prejudice, where the jury are told very plainly that they have no right to go outside of the evidence admitted by the court and no right to reject arbitrarily the evidence of any witness, that they must fairly consider all of the evidence in the case, that every person is presumed to be innocent until he is proved guilty, and that if upon such proof there is reasonable doubt remaining the accused is entitled to the benefit of it by acquittal.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Earl Rogers, H. L. Giesler, and W. H. Dehm, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy Attorney-General, for Respondent.

CONREY, P. J.—The defendant was brought to trial upon an information charging him with the crime of murder in the killing of one Harry Sharpley, a human being. Upon a verdict of guilty of murder in the second degree, judgment was entered that the defendant be imprisoned for a term of ten years in the state prison at San Quentin.

On Sunday morning, September 7, 1913, the defendant and his wife Gertrude Kiser were living on South Wall Street in the city of Los Angeles in two rooms which they had occupied for about three days. With them were two children of Mrs. Kiser. The daughter, Lucille, was thirteen years old, and the boy Ralph, was nine years old. At about 9 o'clock on the morning of September 7th, the defendant with his wife and the two children were in the rooms above mentioned. At that time Harry Sharpley, having been admitted to the hallway dividing the two sections of the house, knocked on the door of the Kiser apartments and was admitted. Sharpley had breakfast with the family, and the children went out to play. After some time defendant and Sharpley went out and walked the street together for a few blocks and then returned to the Kiser rooms. Finally, at about 12 o'clock,

the defendant fired five shots from a revolver and killed both his wife and Sharpley. Two shots took effect upon Mrs. Kiser and two upon Sharpley. The defendant is the only surviving eye-witness of the tragedy.

.The defendant testified to facts which, if true, would prove that Sharpley was the aggressor; that Sharpley had assumed a threatening attitude toward Mrs. Kiser; that she screamed and defendant called on Sharpley to stop; that thereupon Sharpley struck the defendant; that defendant then began to fire and continued to fire while the two men struggled against each other; that the bullets which struck Mrs. Kiser were not intended for her, and that the shooting of Sharpley was wholly in self-defense. By the testimony of several witnesses it was shown that Mrs. Kiser ran out of the house after she was hit. Both of the children testified that several shots were fired after Mrs. Kiser came outside, and this testimony is not contradicted. According to this evidence, Sharpley was killed by shots which were fired after Mrs. Kiser ran out of the house.

Mrs. Kiser had lived with Sharpley at the city of Salt Lake and at the city of San Diego, but was not his wife. Lucille said on direct examination that her mother and Sharpley were married at San Diego, and on her cross-examination said that they were married at Salt Lake City. In both of these statements the witness was probably mistaken. Throughout the trial it was assumed, both by the prosecution and by the defense, that the woman in question was not the wife of Sharpley, and defendant has no ground for complaint that the court refused to allow testimony that her marriage to Kiser was a valid marriage. Sharpley having left this woman at San Diego in the spring of 1913, she ascertained the address of defendant Kiser and wrote to him about her dependent circumstances. He thereupon went to San Diego and married her. Without objection from the state, he was permitted to testify that she was his wife from and after the time of that marriage, which occurred on June 3, 1913. Soon after the last mentioned date Sharpley returned to San Diego, but there was never any personal meeting between him and Kiser until September 7th. The defendant says that when Sharpley returned to San Diego the defendant had trouble with his wife about this man, that his wife asked

him to come to Los Angeles, and that if he would do so "we probably· would not have any more trouble." The family arrived at Los Angeles and took the rooms on Wall Street on the Thursday preceding Sunday, September 7th. On Friday the defendant bought the pistol with which he did the shooting the following Sunday. According to his own testimony, he told the officers after the shooting that he bought it "to protect my home with and so that man didn't come there and harm my wife, myself and my family." On Thursday, the 4th, Mrs. Kiser wrote a letter to Sharpley at Riverside and it was read by the defendant before it was mailed. According to the defendant's testimony, she told Sharpley in this letter that they had arrived in Los Angeles and that if he wanted to see them he would have to come up here, and gave him the number of the house where they were living. According to Lucille's testimony, Kiser told his wife what she was to say in the letter, but he·denies this. It is manifest that there is evidence entirely sufficient to support the verdict of murder in the second degree. The only questions requiring discussion here relate to the order denying defendant's motion for a new trial and the alleged errors claimed as grounds for a new trial.

The first point is that the court refused to allow evidence of the manner, demeanor, and sayings of Sharpley when he arrived at the house of defendant. This claim is unfounded. The defendant testified fully about Sharpley's visit there from beginning to end. It is true that the court did not allow the state's witness Elizabeth Dougherty to testify on cross-examination in answer to the question as to whether Sharpley presented "any strange appearance" upon entering the door to ,defendant's apartments. Mrs. Dougherty had just testified that, although she was in the hallway outside the defendant's apartments when Sharpley came to the house, she did not notice his appearance. The question ruled out was not responsive to any part of the direct examination and the objection was properly sustained.

We do not agree with the contention that the court by its rulings tended to prevent the jury from understanding that the defendant did not intend to kill his wife. Under this head it is claimed that the court shut out very largely the testimony offered as to Kiser's relations with his wife. We

think that there was no prejudicial limiting of such testimony. The charge upon which defendant was being tried related solely to the killing of Sharpley. Incidentally it had to be shown as part of the transaction that Mrs. Kiser also was killed. Defendant was allowed to show the principal facts as to the relations of all the parties, as we have outlined them in the preceding paragraphs. No specific assignments of errors in these rulings are pointed out in the briefs, except those to which we shall refer.

It is claimed that there is no evidence disproving Kiser's statements as to what took place during his struggle with Sharpley. It is true that there is no testimony directly disproving those statements, but the circumstantial evidence was such that the jury was not obliged to believe the defendant. It is argued that "the bullets appear to have all been fired while the revolver was held in an upward direction as though fired by one whose adversary had the upper hand." This is not true, except possibly as to the bullet which passed through the arm of Mrs. Kiser and the bullet which passed through the arm of Sharpley. The bullet which killed Sharpley passed through his lungs from the left to the right side, ranging downward. The bullet which killed Mrs. Kiser entered her back and ranged very slightly upward.

The court did not err in such limitations as it placed upon the testimony showing the relations between Sharpley and Mrs. Kiser and between Mr. and Mrs. Kiser with reference to Sharpley. The rulings of the court in sustaining objections made to questions about the circumstances of Sharpley leaving the woman at San Diego prior to her marriage to Kiser were proper rulings. Those circumstances were not material to the issues before the court. The same is true of the court's refusal to allow the witness Beaumont to relate what the defendant may have told him about a quarrel between him and Mrs. Kiser in Kansas, which was long before his marriage to her. The court sustained objection to a question calling on the defendant to relate the circumstances of his first meeting with Gertrude Kiser at Wichita, Kansas. The object of the question was stated to be to show the state of his mind at and leading up to the time of the tragedy. This was entirely too remote from the transactions under inquiry before the court. It was proper that a reasonably fair and

full statement of the previous relations of the parties should be permitted to go to the jury, so that it might determine whether or not the defendant as a reasonable man was actually in fear of danger to his life.  This the court did permit without abuse of its power to regulate the trial by cutting off useless extensions of the inquiry to remote and irrelevant matters.

It is claimed that the court erred in refusing to admit evidence of Sharpley's statements concerning the defendant immediately before the shooting.  Apparently the question referred to was one addressed to Mrs. Dougherty, and therefore the statement, if any was made, must have been some hours before the shooting.  It appears from her own testimony that she did not hear any statement made by Sharpley concerning the defendant.  She testified that her apartment was separated from the Kiser apartment by a narrow hall; that she went to the main door of the house when Sharpley arrived and Sharpley said: "Is there a woman here with two small children?"  Objection was made to this statement and the objection was sustained.  "Q. Then you heard no conversation between Mr. and Mrs. Kiser that morning?  A. No, sir, I did not.  Q. Did you hear any conversation between any persons in that apartment on that Sunday morning?  A. No, sir, I did not."  There was nothing in any of the questions asked, nor in any of the statements made by defendant's counsel to the court, which indicated a desire on the part of the defendant to prove by Mrs. Dougherty that Sharpley had made any threats against defendant, or any hostile statements concerning him, or that any such threats or statements were brought to the attention of defendant.  The record does not sustain the contention that the court wrongfully directed the witness to leave the stand and cut off counsel from further interrogation.  The court did not refuse any request for further examination of the witness.

On cross-examination of Mrs. Sproul, who had testified for the prosecution in regard to hearing shots fired and that she saw Mrs. Kiser run out of the house, defendant's counsel asked her if she had any conversation with any of the officers in the case and what they told her in regard to the shooting At this point the court interfered and directed defendant's counsel that he need not ask the witnesses to tell what the

24 Cal. App.—35

officers told them. The direct examination of this witness had been limited solely to what she herself heard and saw, and no suggestion was made of a reason for asking her about conversation with the officers. All of the evidence indicates that no officer was present when the shooting occurred or near enough to hear the sound thereof. The questions were not proper cross-examination for any purpose shown or indicated to the court.

The court did not err in sustaining objections to questions asked on cross-examination of Detective Myers, a San Diego officer who testified on behalf of the state. Myers had testified to statements made by Kiser to him at San Diego at a time when Kiser was complaining that Sharpley was interfering with his family, statements to the effect that he would "take it into his own hands." On cross-examination, in reply to questions by defendant's attorney, the witness was allowed to review this same subject matter, including also Kiser's statement to the witness, that Kiser was married to the woman, and was properly treating and providing for her and her children. The only questions ruled out (so far as not covered by other questions and answers permitted) were: "Did he tell you as to his family relations, how they were with Mrs. Kiser?" Also, "Did he tell you about Sharpley deserting Mrs. Kiser in some town in Kansas?" The contention is that the court erred because the defendant had the right to disclosure of all of the conversation described in the direct examination of the witness. The rule that where part of a conversation has been shown in testimony the remainder of that conversation may be brought out by the opposing party on cross-examination, is necessarily subject to the qualification that the court may exclude those portions of the conversation not relevant to the items thereof which have been introduced. A party claiming that the court has erred in its exercise of discretion as to such a matter of cross-examination must show by the record some definite and legal purpose in the asking of the excluded question. Here an examination of the questions and answers which were admitted on cross-examination, shows that they covered the topics of the direct examination very fully, and that the excluded questions, so far as not included in other admitted questions, were upon immaterial matters.

With respect to the court's ruling in sustaining objections to questions asked on cross-examination of the witness Glenn and on cross-examination of the witness Mrs. Boulay, we reach a conclusion similar to that discussed in the preceding paragraph. The additional items sought to be produced were either not material or were so far collateral and of minor importance that the court was justified in limiting the testimony, and no one was prejudiced thereby.

The defendant testified that on Friday evening, September 5th, Mrs. Kiser told him that Sharpley had said that he would get even with her for getting married. The court then sustained objection to the following question asked of defendant by his counsel: "Did Mrs. Kiser say to you whether or not she was afraid and had any fears of Sharpley carrying out his threats?" This objection should have been overruled. The threat was shown by the preceding answer. The only material matter then remaining was whether the defendant had any reasonable ground to entertain fears concerning Sharpley as to that threat. But in view of the fact that Mrs. Kiser was acquainted with Sharpley, and the defendant had never met him, the fact of her being afraid might have furnished the defendant with some ground of apprehension. We are of the further opinion, however, that this error of the court, when the matter is considered in connection with all of the evidence, does not furnish a reasonable ground for reversal of the order denying a new trial. The facts, as to the relations of these parties, were very fully shown to the jury.

After the witness Mrs. Boulay had testified for the defendant as to his good reputation at San Diego, the district attorney asked some questions about a supposed quarrel between Kiser and his wife. Upon objection being made, the district attorney said: "That's the statement she made to the officers." Complaint is now made that this was misconduct on the part of the district attorney. It is a sufficient answer to say that no assignment of misconduct was made at the time. (*People v. Babcock,* 160 Cal. 545, [117 Pac. 549].)

The court refused defendant's request for the following instruction to the jury: "If any one, or any member, of you, after deliberating on and considering all the evidence in this case, shall be of the opinion that the defendant has not been proved to be guilty to a moral certainty and beyond a reason-

able doubt, those of you entertaining such opinion should vote in favor of acquittal, and should so adhere to your opinion until convinced to a moral certainty and beyond a reasonable doubt of the guilt of the defendant of the alleged crime by and from the evidence and the law alone in this case.'' The defendant relies upon *People* v. *Dole,* 122 Cal. 486, 495, [68 Am. St. Rep. 50, 55 Pac. 581], where it was held that a very similar instruction should have been given. In *People* v. *Perry,* 144 Cal. 748, 754, [78 Pac. 284, 287], it is pointed out that the judgment in *People* v. *Dole* was not reversed solely or principally upon the refusal to give that instruction, and the court holds that the refusal to give such instruction may be cured by the giving of other instructions clearly pointing out the duty of the jurors to base their verdict upon the evidence alone. In his concurring opinion in the Perry case, Justice Shaw said: ''Upon further consideration of the question I am satisfied that the refusal of such an instruction should not be considered an error of sufficient importance to justify a reversal in any case where the jury are fully instructed that the verdict must be based upon the evidence alone.'' In the case at bar the jury were told very plainly that they had no right to go outside of the evidence admitted by the court and no right to reject arbitrarily the evidence of any witness, and that they must fairly consider all of the evidence in the case. They were further told that every person is presumed to be innocent until he is proven guilty, and that if upon such proof there is reasonable doubt remaining the accused is entitled to the benefit of it by an acquittal. We conclude that even if the court's refusal to give the requested instruction was an error, nevertheless, it was error without prejudice.

The judgment of the court and the order denying defendant's motion for a new trial are affirmed.

James, J., and Shaw, J., concurred.