[Crim. No. 686. Third Appellate District.—September 12, 1923.]

THE PEOPLE, Respondent, v. ANTONIO ORTIZ, Appellant.

[1] CRIMINAL LAW — MANSLAUGHTER — PREPARATION FOR TRIAL — ANNOUNCEMENT OF COUNSEL—APPEAL.—In a prosecution for murder in which the defendant was convicted of manslaughter, the defendant will not be heard to complain on appeal that he was not given sufficient time to prepare for trial, where at the beginning of the trial counsel for defendant announced to the trial court that defendant was ready to go to trial.

[2] ID.—CIRCUMSTANTIAL EVIDENCE—PROPOSED INSTRUCTION—PROPER REFUSAL TO GIVE.—In such prosecution, it was not error for the

trial court to refuse an instruction proposed by defendant to the effect that if circumstantial evidence leads to two opposite conclusions, one consistent with guilt and the other with innocence, the jury should acquit, where the evidence was not circumstantial but the positive testimony of eye-witnesses, and the jury was fully instructed on the question of burden of proof and reasonable doubt.

[3] ID.—INFERIOR EVIDENCE—PRESUMPTION—REQUESTED INSTRUCTION—REFUSAL OF.—In such prosecution, the refusal to give a requested instruction stating the presumption arising from the production of inferior evidence was proper where no such evidence was introduced.

[4] ID.—CREDIBILITY OF WITNESSES—INSTRUCTIONS.—In such prosecution, a given instruction as to the rules for determining the credibility of all witnesses was sufficient, without instructing the jury as to the manner of weighing defendant's testimony.

[5] ID.—INSTRUCTION.—A part of an instruction to the effect that the jury has not the right to "discredit or discount" the defendant's testimony "merely by reason of the fact that he is the defendant" is not a correct statement of the law.

[6] ID.—JUDGMENT OF JURORS—INSTRUCTION.—The refusal to instruct the jury that the defendant is entitled to the independent judgment of every juryman is not reversible error.

[7] ID. — SELF-DEFENSE — PLACING OF WEAPON BY THIRD PERSON IN HANDS OF ONE OF PRINCIPALS.—To justify the taking of human life on the ground of self-defense, it is not sufficient to show that the one who committed the act believed that his life was in danger from a threatened attack, but it must appear that he had reasonable cause to believe that he was in imminent danger of losing his life or suffering great bodily harm and that he believed, as a reasonable man, that it was necessary for him then and there to take the life of the deceased to save himself from death or great bodily harm; and the same rule applies in the case of an accused who, being present and knowing the situation of the principals, participates by putting a deadly weapon into the hands of one of them.

[8] ID.—RESPONSIBILITY OF DEFENDANT AS ACCESSORY—INSTRUCTIONS. In such prosecution, the defendant, in view of given instructions, was not prejudiced by the refusal to give an instruction proposed by him relating to his responsibility as an accessory.

[9] ID.—INSTRUCTIONS.—Where the trial court has clearly stated the elements necessary to constitute the crime charged, the jury must

7. What amounts to participation in homicide on part of one not actual perpetrator, who was present without preconcert or conspiracy, note, 12 A. L. R. 275.

be presumed to have understood that in the absence of sufficient proof of any one of those elements the defendant was entitled to an acquittal.

[10] ID.—RESPONSIBILITY OF ACCESSORY—WHEN CEASES.—Responsibility of an accessory "does not cease simply because, after starting the ball, he changes his mind, and tries, when too late, to stop it. To emancipate him from the consequences, not only must he have acted in time, and done everything practicable to prevent the consummation, but the consummation, if it takes place, must be imputable to some independent cause."

[11] ID.—MOTION FOR CONTINUANCE—PROPER DENIAL OF.—In such prosecution, the trial court did not err in refusing a continuance to enable defendant to prepare affidavits on motion for a new trial, where in support of the motion for a continuance counsel for defendant presented his own affidavit in which he stated he "believed" that a certain person would testify to certain facts, and such evidence, if produced, would have been cumulative only.

APPEAL from a judgment of the Superior Court of Butte County and from an order denying a new trial. H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

Russell P. Tyler for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was charged with the murder of one Felix Rolden and was convicted of manslaughter. This appeal is from the judgment and the order denying defendant's motion for a new trial. The facts hereinafter stated, except as otherwise indicated, are gathered from the testimony of witnesses for the prosecution.

The homicide occurred at the Terminal Hotel, situated a mile south of Oroville, on the twenty-second day of October, 1922. About a month prior thereto the defendant, his wife, and a man named Bilboa went to this hotel together, the defendant and his wife staying there for two days and Bilboa a few days longer. Bilboa returned October 20th and on the 22d, at about 7 o'clock in the evening, the defendant, his wife, and a young man whose name is not disclosed by the evidence, who will be called "Doe," arrived at the hotel in an automobile driven by the defendant, he having

theretofore engaged a room for himself and wife. During the evening a number of guests, including the defendant, Doe, Bilboa, and Rolden, were in the dining-room drinking intoxicating liquors, Bilboa becoming intoxicated. Shortly after 10 o'clock Rolden became incensed at some of the statements made by the drunken man and attacked him, striking a few blows, but apparently causing no injury. The defendant and Doe, with others, separated the two men, whereupon Rolden drew a razor from his pocket and accused the defendant and Doe of taking Bilboa's part in the affray. Doe told Rolden to put the razor away but the latter refused and, stepping toward Doe, threatened to kill him. Doe then approached the defendant and asked, "Where is the gun?" The defendant, either alone or in company with Doe, left the room and immediately returned with a pistol and, pointing it at Rolden, said: "Take that razor away or I will kill you." Rolden refused and made further threats and, according to one witness, made demonstrations of intent to inflict injury with the razor. Doe then took the pistol and shot Rolden. One witness testified that when Doe took the pistol he said to Rolden: "Throw the razor away," and that the latter said: "No, I cut your head off," and attempted to cut Doe, and that thereupon Doe fired. Another witness testified that Rolden had turned away from the defendant and Doe before the shot was fired. The bullet entered Rolden's back and passed out at the front of his chest. The evidence is conflicting as to whether the defendant made any effort to prevent Doe from taking the pistol. The defendant and his wife immediately left, taking Doe and Bilboa with them. When they were about to leave one of the witnesses asked defendant to take the wounded man to a hospital and the defendant replied that he would "send a taxi up here right away," but he did not do so.

The defendant testified that he never saw either Doe or Bilboa except on the evening of the homicide; that he was not present at the time of the quarrel between Rolden and Bilboa or at the time the shot was fired and that he did not procure the pistol; that the first he knew of any trouble was when, while he was in his room preparing to retire, he heard the pistol shot and that, on making inquiry, he was informed that a man had been hurt and was urged by the

proprietor of the hotel to leave immediately; that he and his wife then left in his automobile and that some man, he did not know who, rode with them as far as Oroville. He denied that Bilboa left with him. No witness testified as to the subsequent whereabouts of either Doe or Bilboa. The defendant testified that he left with the intention of going to Arizona, where he hoped to secure employment in the mines; that he drove for three days until he reached Brawley, Imperial County, about twenty-three miles from the Mexican line, stopping a few hours each night to sleep in the automobile; that he remained in Brawley for three days for the purpose of having some necessary repairs made upon his machine, and at the end of that time was placed under arrest and taken back to Oroville; that in going to Brawley he traveled the main highway through Oroville, Marysville, Sacramento, Stockton, Fresno, Bakersfield, and Los Angeles. It is not contended that the evidence is insufficient to justify the verdict and the foregoing outline is given in order that the points relied on for reversal may the better be understood.

[1] Appellant first contends that he was not given sufficient time to prepare for trial. The preliminary examination was held November 4th and the information was filed November 20th. On the latter date the defendant was taken before the court for arraignment but, at his request, the matter was continued to the next day when it was again continued at his request, on account of the absence of his counsel, to November 27th, the court announcing at that time that the trial would be set for December 11th. On the 27th of November the defendant entered his plea of not guilty and, over the defendant's objection, the court set the trial for December 11th. The same attorney who appeared for the defendant at the preliminary examination represented him at the trial. At the beginning of the trial counsel for the defendant announced: "We are ready for trial, as well as we can be in the thirteen days allotted." The court said: "If you are not ready to go to trial, the court will hear you now for a continuance. You will avail yourself of that or not complain about it." Counsel replied: "We are ready to go to trial." Appellant cannot be heard to complain of that to which he expressly consented.

The defendant requested the court to give thirty-one proposed instructions, covering some forty folios of the transcript. The court refused to give any of them. It is urged that they all should have been given except one, which it is admitted was substantially given in an instruction prepared by the court. Most of the propositions of law correctly stated in these proposed instructions were substantially given in other instructions. Some relate to the definitions of and distinctions between murders of the first and second degrees and, since the defendant was convicted of manslaughter only, the refusal to give them cannot be considered prejudicial error. Others state mere commonplaces within the knowledge of every intelligent juryman or relate to questions concerning which no evidence was introduced. To review all of the proposed instructions would require a lengthy discussion of well-settled principles of law. As to those not specifically mentioned, it is sufficient to say that there is no merit in the contention that it was error to refuse them.

[2] The first proposed instruction is to the effect that if circumstantial evidence leads to two opposite conclusions, one consistent with guilt and the other with innocence, the jury should acquit. The evidence was not circumstantial but the positive testimony of eye-witnesses. The court instructed the jury fully on the question of burden of proof and reasonable doubt and it was not error to refuse the proposed instruction. (*People* v. *Plumeyer,* 54 Cal. App. 786 [202 Pac. 888].) [3] The second states the presumption arising from the production of inferior evidence. No such evidence was introduced. [4] The eighth relates to the manner of weighing defendant's testimony. No instruction on the subject was given, but the court instructed the jury fully as to the rules for determining the credibility of all witnesses. This was sufficient. (*People* v. *Washburn,* 54 Cal. App. 124 [201 Pac. 335].) [5] The last part of the proposed instruction to the effect that the jury has not the right to "discredit or discount" the defendant's testimony "merely by reason of the fact that he is the defendant" is not a correct statement of the law. (*People* v. *Brown,* 62 Cal. App. 96 [216 Pac. 411, 414].) The ninth deals with the question of the suppression of evidence, but it does not appear that any evidence was suppressed. The twelfth and

thirteenth relate to the flight of defendant, but the court fully and fairly instructed the jury upon that question. [6] The fourteenth is to the effect that the defendant was entitled to the independent judgment of every juryman. It is not to be presumed that any juryman was so wanting in intelligence as not to know that his duty was as indicated by the proposed instruction. The refusal to so instruct has been held not to be reversible error. (*People* v. *Perry,* 144 Cal. 748 [78 Pac. 284]; *People* v. *Knight,* 63 Cal. App. 63 [218 Pac. 79]; *People* v. *Walton,* 53 Cal. App. 35 [199 Pac. 824]; *People* v. *Kiser,* 24 Cal. App. 540 [141 Pac. 1078].) The twenty-first is to the effect that a guest has the right to the use of a public dining-room and need not surrender such right because of the "boisterous or threatening conduct of any other tenant or guest therein . . . and no presumption of malice or premeditation will lie from the mere fact that the defendant returned to said dining-room after being forced to retire therefrom because of the aggressive and threatening manner of the deceased." The word "presumption" as used in the instruction was probably intended to mean "inference" and doubtless would have been so understood by the jury. Whether the defendant's return to the dining-room, armed with pistol, justified an inference of malice or premeditation was a question solely for the jury to determine. The last part of the instruction invades the province of the jury in the assumption that the defendant was forced by Rolden to retire from the dining-room. The twenty-fifth is erroneous in assuming as a fact that "the defendant's only part in the difficulty consisted in efforts to preserve the peace." The twenty-sixth states that "one who believes another's life to be in danger from an attack threatened to be made upon him by a third person has a right to procure a weapon for the other with which to protect him against such an attack." [7] To justify the taking of human life on the ground of self-defense, it is not sufficient to show that the one who committed the act believed that his life was in danger from a threatened attack, but it must appear that he had *reasonable cause to believe* that he was in *imminent* danger of losing his life or suffering great bodily harm and that he believed, as a reasonable man, that it was necessary for him then and there to take the life of the deceased to save

himself from death or great bodily harm. The same rule must apply in the case of an accused who, being present and knowing the situation of the principals, participates by putting a deadly weapon into the hands of one of them. Tested by this rule, the proposed instruction does not correctly state the law. The twenty-seventh stated that ''in order to convict the defendant upon the theory that he was an accessory to the crime you must believe that a common design existed between the defendant and the person who is alleged to have committed the crime and that it· is this common design which renders the accessory criminally responsible for a homicide committed by the principal ánd the defendant cannot be convicted as an accessory where it appears from the evidence that the commission of the crime was the independent resolution of the principal, formed by the principal acting alone and without agreement with the accessory.'' The instruction is somewhat objectionable in that the  jury might understand from it that proof of an express agreement between defendant and Doe to commit the crime was necessary to a conviction, but, aside from this, the court instructed the jury that ''for one person to abet another in the commission of a criminal offense, simply means to knowingly and with criminal intent, aid, promote, encourage or instigate by act or counsel or by both act and counsel, the commission of such criminal offense,'' and that ''if you believe from the evidence beyond a reasonable doubt that the crime charged in the information was committed in Butte County at or about the time therein stated, and that the defendant, Antonio Ortiz, did not himself commit the act constituting that crime, but that the defendant did aid and abet in its commission, or, even though he were not present at its commission, that he did advise and encourage its commission, then you should regard the defendant as a principal in the crime so committed the same as if he had committed the act constituting the offense.'' [8] These instructions so clearly state the law applicable to the case that it is not believed that the defendant could have suffered prejudice by failure to give the proposed instruction. [9] Where the court has clearly stated the elements necessary to constitute the crime charged, the jury must be presumed to have understood that in the absence of sufficient proof of any one of those elements the defendant was en-

titled to an acquittal. If the jurors entertained a reasonable doubt whether "the commission of the crime was the independent resolution of" Doe, "formed by" Doe, "acting alone and without agreement with" the defendant, it would be attributing to them a want of ordinary intelligence to assume that they would convict, in view of the instruction last quoted, together with those upon the question of reasonable doubt and burden of proof. The twenty-eighth and twenty-ninth were to the effect that the responsibility of an accessory ceases when he "abandons the common purpose and withdraws from any further concert . . . and it is sufficient to show the resolve of said accessory if he says or does anything to indicate his resolve to so withdraw from said affray" and that "if the accessory repented of and relinquished his purpose of conniving, aiding and abetting the commission of said crime before the commission thereof, he cannot be convicted of any grade of homicide." The proposed instructions are manifestly incorrect. [10] Responsibility of an accessory "does not cease simply because, after starting the ball, he changes his mind, and tries, when too late, to stop it. To emancipate him from the consequences, not only must he have acted in time, and done everything practicable to prevent the consummation, but the consummation, if it takes place, must be imputable to some independent cause." (Wharton's Criminal Law, 11th ed., sec. 267.) It is contended that the court used the words "aid or abet" rather than "aid and abet" in the instruction last quoted as having been given. By reference to page 24 of the clerk's transcript it will be seen that counsel is in error.

[11] It is finally urged that the court erred in refusing a continuance to enable defendant to prepare affidavits on motion for a new trial. In support of the motion for a continuance, counsel for defendant presented his own affidavit in which he stated that he had been given information concerning a young Mexican boy who, affiant "believed," was the person who rode in defendant's car from the Terminal Hotel on the night of the tragedy and that "affiant believes that said Mexican boy, if found, will testify that he did so ride, . . . that he was present on said premises at the time said shot was fired, and that he knows of his own knowledge that said shot was not fired by the defendant Ortiz nor was

the defendant Ortiz present when said shot was fired; . . . that he knows . . . that there was no one else that rode in said car from said premises . . . except he [said Mexican boy], Mrs. Ortiz and said defendant." Counsel states in his affidavit that he "believes" the Mexican boy will testify to other enumerated matters inconsistent with some of the testimony given at the trial. He failed to state, however, that he had any information to the effect that the Mexican boy would testify to any of the facts enumerated in the affidavit. Such evidence, if produced, would have been cumulative only. It was not error to deny the motion for a continuance on the showing made.

The judgment and order are affirmed.

Hart, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 8, 1923.