Graham v. City of Lincoln.

ELIZABETH H. GRAHAM, ADMINISTRATRIX, APPELLEE AND CROSS-APPELLEE, v. CITY OF LINCOLN, APPELLANT AND CROSS-APPELLEE: LINCOLN TELEPHONE & TELEGRAPH COMPANY, APPELLEE AND CROSS-APPELLANT.

FILED JUNE 23, 1921.   No. 21431.

1.  **Master and Servant: WORKMEN'S COMPENSATION ACT: SUBROGA-TION.** Under the workmen's compensation law (section 3659, Rev. St. 1913), providing, in substance, that where a third person is liable to an employee, or to dependents, for an injury or death, the employer shall be subrogated to the right of the employee or to that of dependents against such third person, the fact that the employer's negligence concurred with the negligence of the third person in causing the injury does not bar the employer's right to subrogation, and it is not erroneous to fail to instruct the jury that the amount of plaintiff's recovery should be diminished by the amount of compensation paid to plaintiff by the employer.

2.  Evidence examined, and *held* to support the verdict.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*C. Petrus Peterson, Charles R. Wilke* and *R. A. Boeh-mer,* for appellant.

*Hall, Baird & Williams, G. W. Berge* and *J. S. McCarty, contra.*

Heard before Morrissey, C.J., Day, Dean and Letton, JJ.

Letton, J.

The plaintiff is the widow of one Roy C. Graham, who was fatally injured while in the employment of the Lincoln Telephone & Telegraph Company. She was appointed administratrix of his estate, and filed with the compensation commissioner a claim for compensation from the company for the death of her husband. From the award in her favor the company appealed to the district court, where judgment was rendered against it for $550, weekly payments past due, and for the further sum of $12 a week for 325 consecutive weeks thereafter; $150 of the award, however, being a penalty for delinquency in making payments. She afterwards commenced this action against the city of Lincoln on the ground that by its negligence it had caused the death of her husband. She made the telephone company a party so that it might be reimbursed for any amount it might pay the plaintiff under the workmen's compensation act, except the penalty. The telephone company filed an answer praying it might be subrogated to any judgment against the city to the extent that it was liable under the workmen's compensation act. The jury returned a verdict against the city in the sum of $13,000, and it has appealed. No verdict was rendered as to the telephone company, but it is not here complaining of this; apparently plaintiff and that company having come to an agreement.

Two points are relied upon: First, that the verdict and judgment are not sustained by the evidence. Second, that the court erred in failing to instruct the jury that if they should find against the city they should deduct from the amount of her recovery the amount she had already obtained in judgment against the telephone company, less the $150 penalty.

In addition to the general verdict, the jury made a special finding to the effect that the accident resulted

"solely from the joint negligence of the defendant city and the defendant telephone company," and upon this finding the city bases its contention as to error in failing to instruct.

On the day of the accident a two-story house being moved on Q street was in the intersection of Eighteenth and Q streets. The peak of the house extended east and west, with the roofing sloping north and south at about 45 degrees. A telephone cable and three secondary and two primary electric wires belonging to the city crossed the street and hung so low that it was necessary for the men on the roof to raise them to enable the house to pass under. A permit had been obtained from the city to move the house, and on the day of the accident the city sent two of its men to assist. The primary wires carried between 4,000 and 4,400 volts, and the secondary wires 110 volts. The insulation was insufficient to protect against that voltage. It would have probably taken 10-minutes time to disconnect the primary wires. Deceased, a lineman and a foreman were sent by the telephone company to raise the telephone cable. Some conversation was had with the electricians for the city, one of whom said he would pull the fuse. He climbed a pole and pulled the fuses, but those pulled were on the secondary circuit. This did not affect the wires carrying the 4,400-volt current. When the men were on the roof, one of the city employees directed the work. The house had passed to the eastward so far that the wires were nearly clear, when there was a flash of flame just above the head of the deceased, and he fell backwards from the roof to the ground. At the same time an employee of the city also received a severe electric shock, but was not killed.

Defendant argues that, since there is testimony in the record that linemen are accustomed to handling wires carrying 4,400 voltage on dry roofs of buildings with their bare hands, or with their hands clad in the kind of gloves which they used for ordinary work, there is no negligence proved on the part of the city in failing to furnish com-

Graham v. City of Lincoln.

plete insulation, or in failing to shut off the current while the men were at work upon the roof; that the circuit must have been closed by the contact of the deceased in some way, either with the telephone cable or with a piece of tin around the chimney hole at a time when he was in contact with the primary wires, and that the city should not be expected to anticipate such a condition, and therefore to guard against the same. And, further, that since the deceased had been instructed by his employer under no circumstances to rely upon insulation as a complete protection against high-tension currents, but always fear such wires and to consider they are alive, he was guilty of gross contributory negligence and cannot recover.

We are convinced that under the facts the city was negligent in not cutting off the current from the primary wires, which the evidence shows could easily have been done without interfering with service to its customers. Furthermore, we are satisfied that there is not sufficient evidence to establish negligence on the part of the deceased, and we think the verdict against the city is amply supported.

The next point argued is that the court erred in failing to instruct that, if the jury should find against the city, they should deduct from the amount the plaintiff shall otherwise recover the amount for which she had already obtained judgment against the telephone company, less $150 allowed for delinquency in making payment. Both the plaintiff and the telephone company prayed that, out of whatever judgment is rendered against the city, the telephone company be subrogated for all sums paid, or to be paid, under the award under the workmen's compensation act. The court instructed that the amount of compensation received was immaterial, and that the jury need not be concerned as to the division of the fruits of the lawsuit, if any. The city did not ask for an instruction that the amount awarded by the compensation commissioner be deducted from the amount of the city's lia-

bility; but, even if such an instruction had been tendered, it would have been the duty of the court to refuse to give it. Section 3659, Rev. St. 1913, provides, in substance, that the employer shall be subrogated to the right of the employee, or his dependents, against a third person who is liable for the injury or death, and provides "such employer may recover any amount which such employee or his dependents would have been entitled to recover." According to the literal language of the statute, if the telephone company had brought the action instead of the plaintiff, it would have been entitled to recover the full amount. In *Otis Elevator Co. v. Miller & Paine*, 240 Fed. 376, in an action against the elevator company to recover for the death of a workman injured through the negligence of that company, counsel for that company claimed they should have been permitted to show that the negligence of Miller & Paine concurred with that of the elevator company, and that therefore there could be no recovery against it by Miller & Paine. The court said:

"We do not think that any such construction can be placed upon section 109 without reading into the statute language that the legislature did not deem proper to place there. The liability of Miller & Paine was positively fixed by law, regardless of the question of negligence on its part. The law then provided that Miller & Paine should be subrogated to the rights of the dependents of Pettengill against the elevator company, providing it was the negligence of the elevator company that caused his death. To construe section 109 as not permitting Miller & Paine to prosecute an action for the benefit of itself and the dependents of Pettengill, if the negligence of Miller & Paine concurred with that of the elevator company in causing his death, would destroy the section. The object of the section, as clearly appears from its language, was to permit the employer to reimburse himself by an action against the party whose negligence caused the death and also to allow the dependents of the deceased employee to recover a sum over and above the amount for

which the employer was absolutely liable, regardless of negligence, if the evidence should permit such recovery. * * * To decide that the concurring negligence of Miller & Paine could defeat such an action would not only permit one wrong-doer to plead the fault of a joint wrong-doer in defense, but would, as heretofore said, destroy the right of subrogation granted by the statute."

In *Fidelity & Casualty Co. v. Cedar Valley Electric Co.,* 187 Ia. 1014, the defendant complained of the giving of an instruction which stated that the rights of the employer were the same as the rights of the employee against the defendant, and of the refusal of an instruction that, if the fault of the employer contributed to the cause of the injury, it could not recover. The Iowa court followed *Otis Elevator Co. v. Miller & Paine,* 240 Fed. 376, and, after saying that the provision of the Nebraska statute does not materially differ from the statute under consideration, proceeds:

"A discussion of the right of one joint tort-feasor to contribution from another, or of the right of an injured person, who has recovered judgment against, or made settlement with, one joint tort-feasor to recover against another, is not germane to the question involved in this case. * * * There is nothing express or implied in section 2477m6 from which the conclusion can be drawn that the payment of compensation by the employer whose act, jointly with that of another, produced the injuries shall operate as a bar against the right of an employee or the party paying the compensation and entitled to be subrogated to his rights to maintain an action against the person other than the employer, although a joint tort-feasor, for damages. To construe the statute otherwise must do violence to the plain language thereof. The instruction complained of correctly stated the law applicable to the facts and the requested instructions were properly refused."

We approve of this reasoning, and are convinced that

these cases interpreted the statute as the legislature intended. We find no prejudicial error in the record.

AFFIRMED.