Vermeulen Estate.

Argued November 14, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent.)

*Robbin B. Wolf,* with him *Louis Vaira* and *Joseph C. Ralston,* for appellant.

*Harry Bowytz,* with him *Bloom & Bloom,* for appellee.

OPINION BY ARNOLD, J., March 8, 1948:

This appeal is from an order of distribution of the Orphans' Court awarding to Mary Vermeulen the sum of $1,554, her claim being under an express oral contract for day work at the premises of the decedent at the rate of $3.00 per day for two days a week. The claimant was a niece of the decedent.

The first question raised is that the claimant was permitted to testify in support of her claim, particularly in regard to her alleged book of original entry showing the

days and dates that she worked for the decedent. When the claimant was first called to the stand, an objection to her competency, on general matters, was sustained. Her counsel then endeavored to prove by her the alleged book of original entry, and again the court sustained the objection. After other witnesses testified, the claimant was recalled, and it was again sought to get the book in evidence. The court sustained the objection. Thereafter counsel for the executor and for the appellant-heir undertook to cross-examine the witness. She was interrogated as to her health during the time she claimed she worked. The purpose of this was to indicate that she could not have worked the number of days she claimed. She was questioned as to payments which she received from the decedent, for the purpose of showing that she had been at least partly paid. She was asked about groceries and money which the decedent had given her, for the purpose of showing either payment or the absence of a contract. With like purpose she was cross-examined as to the payment by the decedent of a summary conviction fine imposed against claimant's husband. Since all these inquiries related to matters occurring in the lifetime of the decedent, the claimant was unquestionably rendered not only a competent witness as to these matters but generally competent as to all matters: *Goehring's Estate*, 263 Pa. 47, 106 A. 60.

The claimant thereupon testified to all the facts concerning her claim, identified her "book" of original entry, and it was offered in evidence. If the entries in the book were made at or about the time the services were rendered, as the claimant testified, it was competent evidence of the number of days she worked. Claimant's evidence was that she went to work for the decedent in 1933, working two days a week under a contract in which the decedent promised to pay $3.00 a day; and that she performed this work and the decedent paid her nothing. She then testified that some ten years after the commencement of the work, the decedent gave up her barroom busi-

ness and told the claimant that she was buying a home and ". . . buying that property to pay for the amount that she owed me [the claimant]," and that "she had promised that she would make the will . . . so that I would have the house to live in." The claimant and her husband thereupon moved into the property with the decedent in about November of 1943. A quarrel arose between decedent and claimant's husband, resulting in a notice of eviction from the decedent to the claimant in the latter part of 1944. The claimant further testified that between August and December of that year, after the eviction notice, she said to the decedent: "I'm going to move, Aunt Irma, but I want you to pay me for every day I put in for ten years, Tuesday and Friday", and that the decedent answered, "I will pay you."

Minnie Derboben, who is unrelated to the claimant, testified that prior to buying the house, the decedent stated to the witness that "she owed Mary [the claimant] back wages and that she wanted to pay her $3 a day, but Mary was worth more than $3 a day but [that] this was all she could afford"; and that "she was buying this property to give to Mary in payment for what she owed her." The same witness testified that in about July of 1944 (after the decedent ordered the claimant out of the house), in the presence of the witness the claimant asked decedent "if she [claimant] owed her [decedent] anything", and decedent replied, "All I want is for you to move, I want my house," and that the claimant then said to the decedent, "I want you to pay me then for the ten years that you owe me, two days a week at $3 a day"; and that the decedent replied, "Yes, I'll pay you." This was clearly sufficient to toll the Statute of Limitations, 12 PS §31.

As far as tolling the Statute of Limitations is concerned, the testimony of the claimant's sister must be rejected, because the declarations of the decedent relied upon were not made in the presence of the claimant or

her agent: *McPhilomy v. Lister, Exrx.*, 341 Pa. 250, 19 A. 2d 143; 142 A. L. R. 385.

The claimant and her witnesses testified to all facts necessary to make out her claim; and as to tolling the Statute of Limitations the testimony of the claimant and of Minnie Derboben was amply sufficient. In the face of the trial court's certification that he found the claimant and her witnesses to be entirely credible, this is not the type of case for an appellate court to set aside the award on the ground of insufficiency of evidence.

It will be noted that the decedent's claim, if valid, was for $6.00 a week running from January 3, 1933, to July, 1943, ten years and six months, or a minimum of $3,270. With no explanation by the court below, and with no testimony on the record to sustain it, the award was $1,554. This was apparently for 259 weeks, the court merely stating: "Under all the circumstances in this case, we believe that the claimant will be sufficiently paid by allowing her the sum of $1,554, although not equal in value to the house proposed to be transferred for the work done." The claim was on an express contract, with evidence of the decedent's alleged promise concerning the house. When the claimant asserted to the decedent, after the eviction, that she would require payment for the ten year period at $3 a day for two days a week, and when the decedent said she would pay it, the claim was not on a quantum meruit but an express contract with a tolling of the Statute of Limitations. There was therefore no evidence to sustain the court's liquidation of the amount due the claimant.

Appellant calls attention to the lack of basis for the liquidation, but it is not clear whether the appellant desires a new trial to be granted, or confines the appeal to the question of whether the claim should be disallowed. However, if the interest of justice requires, we may award a new trial.

If, within fifteen days, this appellant petitions this court to reverse the decree of the court below, with a

procedendo, so that the case may be heard *de novo,* such an order will be made. If no such petition is filed within the time stated, the order and decree of the court below will be affirmed, costs to be paid out of the estate.