[Crim. No. 2603. Third Dist. Sept. 12, 1955.]

THE PEOPLE, Respondent, v. WILLIAM HARVEY KENT, Appellant.

Burt Lancaster, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier and F. G. Girard, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Appellant was charged by indictment with the following crimes: Count I, attempted burglary; Count II, conspiracy to commit burglary; Count III, grand theft (automobile); Count IV, a violation of section 12021 of the Penal Code (ex-convict possessing a concealed weapon). Appellant was also charged with two prior felony convictions. The public defender of San Joaquin County was appointed to defend appellant, and appellant entered a plea of "not guilty" to all four counts but admitted the prior felony convictions. The jury found appellant guilty on all four counts, and he has appealed from the judgment entered on said verdicts.

Appellant urges a number of contentions for a reversal of the judgment, but before discussing these we shall give a brief summary of the evidence as shown by the record.

At around 4 a. m. on July 15, 1954, Stockton police officers observed a man standing to the rear of Ernie's Super Market in Stockton, but failed in an attempt to apprehend him. Search disclosed a pistol and carbine, and an overcoat near the spot where the man had been standing, and a rope was found hanging from the roof of the market which rope was attached to a suitcase. In said suitcase were various burglar tools. Two men, Perry and Gonsalves, were captured on the roof of the market. On these men or on the roof were found a carbine clip for one of the guns, gloves, masks, a cap, and another overcoat. Across and down a side street a Pontiac automobile with a smashed dome light was found which had been stolen the previous night from a used-car lot in Stockton.

Less than a half-hour after the capture of the two men, an officer searching in the vicinity saw a man come from a

yard on the dead run and cross an alley, and although the officer identified himself as an officer and fired a shot, the man escaped. He was identified as the defendant by general appearance and clothing. The defendant was found shortly thereafter hiding under a car on a grease rack in a service station a few blocks away. On him were found a single key which fitted the stolen auto and in another pocket a key chain with nine different automobile keys identified as for General Motors Corporation automobiles, and also found on him was some $500 in cash, which was taken by the police.

Parked on Stockton Street was found a Hudson automobile owned by Gonsalves, in which was found a coat belonging to defendant. A latent fingerprint of defendant was found on the glove compartment. In the trunk of this car was a Bank of America money bag with some wrapped coins, the wrappers bearing "San Carlos, July 9, 1954," and the number "893," which was the bank number of the San Carlos Branch, Bank of America. Also in the trunk was a jacket with a hood that covered the head except for slots for the eyes and nose, gloves, and "jumper" wire of a kind used to short-circuit automobile ignition locks.

Over objection, to connect defendant with the crime by way of common scheme, evidence was put in to show that the night previous to this attempted burglary three men did burglarize a market in San Carlos by drilling a hole in the roof of the market, dropping inside, and then capturing at gun-point the store personnel when they arrived for work, forcing the manager to open the safe, after which they escaped with their loot. These robbers wore masks and gloves of the same kind found in this case, and the weapons used were identified as the same as used here. Money taken then was put in a bag identical to the one found in trunk of the Hudson belonging to Gonsalves. Escape was made in a stolen Buick with a smashed dome light which had been parked near the scene. Finally, appellant was positively identified as one of the participants in the San Carlos job by one of the clerks there, and one of the masks taken in the Stockton capture was identified through certain peculiarities of coloring as being one of the masks worn at the San Carlos job the night previous.

After arrest and upon questioning by the police, defendant denied knowing Perry and Gonsalves and denied ownership of the coat found in the Hudson, but it was stipulated that defendant did own the coat. He testified that he had denied knowing two persons identified by the police by names which

were aliases of Perry and Gonsalves, and that he had not been confronted with them until later, at which time he had not acknowledged his acquaintanceship with them because he did not want to be photographed with them as a purported accomplice in whatever crime they were accused of committing.

Defendant testified in his own behalf to the effect that he came from San Francisco to Stockton during the early morning hours of the 15th in the company of a married woman. He said he obtained transportation from her in order to conduct certain business dealings, including purchase of an automobile from a local dealer recommended to him by a friend, and that was why he had the little over $500 in cash on his person. There was testimony that a short time previous to the 15th of July defendant had talked over the purchase of a car with a Stockton used-car salesman for a price quoted at $495, and that defendant had told the salesman that he would be back with the money to buy the car in a few days, but had not done so.

Defendant testified he had been released from San Quentin on January 12, 1954, and had been gainfully and steadily employed as a steelworker for most of the period from then to the time he was arrested in connection with this case, and also had been employed at part-time work during the same period. This was supposedly the source of the money found on him.

Defendant further testified that when he and the woman arrived in Stockton, they both went to her house to enable her to pick up some personal possessions, such being the object of her visit, and that they were unexpectedly confronted by her husband who threatened violence to both. Defendant said he then ran from the house in fear and to avoid trouble and that when the policeman shot at him he thought it was the husband, but that the policeman had not identified himself as an officer of the law. Defendant said the woman had children and had since returned to her husband and did not want to become involved and he would not compel her to testify nor reveal her identity. He testified that the keys were some given to him by this woman because he had driven her automobile on the trip to Stockton, and that the single one found on him was for the ignition of her car. He said that he knew Gonsalves and Perry and had a short time previous to the robbery attempt helped the former clean the basement of his home and left his coat in his car after riding in it. There

was supporting testimony placing him at Gonsalves' home about a week before.

Defendant denied any connection with the San Carlos robbery of the night before and denied ever being in San Carlos. It was stipulated at the trial that defendant had previously been convicted of robbery and had been sentenced to San Quentin therefor.

█ Appellant's principal contention, made in the brief filed by counsel appointed by this court and in a letter written to this court by appellant, is that his constitutional right to counsel of his own choice was denied by the court's refusal to grant his request for the return of the $500 found on his person at the time of his arrest. Appellant argues that this was a violation of his constitutional right of due process under the state and federal Constitutions because it deprived him of the opportunity to employ counsel of his own choosing and the ability to finance a proper investigation in preparation for his trial.

Appellant states in his brief that at the preliminary examination before Municipal Judge Dozier he made a request for the return of the $500 to him, but the record of the preliminary examination is not before us upon this appeal and we cannot consider it.

The record does show that $500 in currency was taken from appellant at the time of his arrest and that it was at first admitted in evidence on the theory that it was part of the fruits of a previous robbery in San Carlos, but at the conclusion of the evidence the court granted a motion to strike it from the record and stated to the jury:

"Now, there is absolutely no evidence that would permit an inference that this money could have come from that San Carlos store. There is no evidence in the record as to the amount of money that was taken from the San Carlos store or the kind of money. Furthermore, the defendant has testified that he has been working and earning money, so therefore the jury are admonished to draw no improper or no inference unfavorable to the defendant by reason of the possession of that money at the time of his arrest."

However, as pointed out by respondent, the record is devoid of any motion, proceeding, action, or ruling thereon, for the return of the $500 in question. Furthermore, there is nothing in the record to show any objection to the appointment of the public defender as counsel for appellant or to his conduct of the defense, and a reading of the record shows that the public

defender conducted appellant's defense with vigor and ability both in his cross-examination of the People's witnesses and in his argument to the jury.

We conclude, therefore, that there is nothing in the record to support appellant's contention that he was deprived of his constitutional right of due process.

■ There is no merit in appellant's final contention that the court erred in unduly limiting his counsel's redirect examination of himself. On cross-examination the deputy district attorney asked appellant certain questions pertaining to conversations with police officers. The questions were directed as to whether appellant had advised the officers of the alleged fact that he had accompanied a woman friend to Stockton and been forced to flee from her home as a result of threats by the husband and whether appellant was asked if he knew Gonsalves and Perry, and his answer thereto.

On redirect examination the following occurred:

"By Mr. BRISCOE [Public Defender]: Q. When you were talking to the police officers at the county jail or at the Police Department were you told that you and Gonsalves and Perry fitted the description of three men who held up and robbed, in the same manner this was supposed to have been done, the Super Market in San Jose in November of 1953?

"Mr. JOHNSON: Just a moment, we'll object to that as going beyond the scope of the cross-examination. No mention about that particular market in San Jose.

"THE COURT: Objection is sustained."

The record shows no reference to any other crimes supposedly connected with defendant except the San Carlos burglary on July 14, 1954, and on cross-examination no reference to other crimes including San Carlos.

Defendant contends that since evidence of the San Carlos crime was put in by way of the common scheme exception, and even though admissible was highly prejudicial, he should have been allowed to show that other similar crimes could not have been committed by him since he was in prison. It is to be noted that prior to this question it was shown that defendant had entered prison in 1948 and that he had only been released in January, 1954. Defendant argues he should have been allowed to show the scheme used in the Stockton crime was a common one.

The question was clearly beyond the scope of the cross-examination.

■ Furthermore, even under Code of Civil Procedure,

section 1854, the remainder of the various conversations alluded to could not be brought in because the cross-examination with regard to them only had been to impeach the witness by showing prior statements inconsistent with his testimony at the trial. The question asked and objected to, no matter how answered, would have had no bearing on the credibility of the witness. The rule that where part of a conversation has been shown in testimony the remainder of that conversation may be brought out by the opposing party, is necessarily subject to the qualification that the court may exclude those portions of the conversation not relevant to the items thereof which have been introduced. (*People* v. *McCoy*, 25 Cal.2d 177, 186-187 [153 P.2d 315]; *People* v. *Altmeyer*, 135 Cal. 80 [66 P. 974].)

No contention is made by appellant that there is not ample evidence to support the judgment of conviction, and we are convinced from a careful study of the entire record that appellant received a fair trial, was ably defended, and that no prejudicial error was committed.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied September 27, 1955.