[L. A. No. 26484. In Bank. Dec. 4, 1961.]

JAMES ROBERT WITT et al., Plaintiffs and Appellants, v. RAYMOND LESTER JACKSON, Defendant and Respondent; CITY OF LOS ANGELES, Intervener and Appellant.

Murray Jackson for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Edwin F. Shinn and Sanford M. Gage, Deputy City Attorneys, for Intervener and Appellant.

Spray, Gould & Bowers and Jean Wunderlich for Defendant and Respondent.

TRAYNOR, J.—This action was brought by James Witt and Julius Grossman to recover damages for personal injuries sustained when the automobile in which they were riding was struck from the rear by one owned and operated by defendant Jackson. The City of Los Angeles, plaintiffs' employer and owner of the vehicle that was being driven by Witt at the time of the accident, intervened to recover for the damage to its automobile and for workmen's compensation benefits and medical expenses paid to plaintiffs. Judgment was entered on jury verdicts for defendant and against both plaintiffs and the city. Plaintiffs and intervener appeal.

The accident occurred in a posted 45 mile per hour speed zone on Sepulveda Boulevard in Los Angeles at approximately 2:30 a. m. on March 3, 1958. Sepulveda Boulevard is a straight north and south four-lane highway with a double white line in the center. The impact occurred in the northbound lane adjacent to the double white line. Both plaintiffs were in uniform and were on duty as police officers. They were in a marked, black and white police car with two red lights on the roof, which shone toward front and rear when turned on.

According to plaintiffs' version of the accident, they were traveling north on Sepulveda Boulevard in the lane next to the double white line when they saw a 1957 Dodge traveling ahead of them at approximately 20 to 25 miles per hour in the right lane for northbound traffic. Because it was moving so slowly when traffic conditions were light, plaintiffs suspected that the driver was under the influence of alcohol. Witt pulled the police car alongside the Dodge, and in accordance with normal police procedures, Grossman flashed his flashlight at the driver of the Dodge to attract his attention. As the Dodge was moving off the roadway and stopping, Witt slowed down to get behind it, looked in the rear-view mirror and observed headlights moving rapidly toward him, and heard brakes or tires screeching. The police car was struck from the rear by defendant's car. Witt testified on direct examination that he turned on the red roof lights "just prior" to pulling alongside the Dodge and estimated that the impact occurred 5 to 10 seconds thereafter. He testified on cross-examination that he turned them on when he was approximately 50 feet behind the Dodge. He had stated in a prior admission that he turned them on after he had pulled alongside the Dodge.

Defendant testified that he was a California highway patrolman, returning home from an evening at his brother's home. Although he was in uniform, he was not on duty. He admitted

drinking two glasses of beer at lunch during the preceding afternoon and about a quart of beer at his brother's home, which was located approximately 5 miles from the scene of the accident. As he was traveling north on Sepulveda Boulevard in the lane next to the double white line at approximately 35 miles per hour, he first observed the taillights of what proved to be plaintiffs' car in the right hand lane. He observed it change to the lane in which he was traveling when he was approximately 100 feet behind it. He applied his brakes as soon as the red roof lights of the police car went on. He estimated that he was then 50 to 75 feet behind it.

Plaintiffs challenge the instructions relating to the contributory negligence of plaintiff Witt. In addition to giving the standard instruction on the subject of contributory negligence, the trial court, at defendant's request, instructed the jury in the language of Vehicle Code sections 544, subdivision (c) (now § 22109) and 526, subdivision (a) (now § 21658). "No person shall stop or suddenly decrease the speed of a vehicle on a highway without first giving an appropriate signal in the manner provided in this chapter to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." (§ 544, subd. (c).) "A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." (§ 526, subd. (a).) Immediately following the giving of these instructions, at plaintiffs' request the court instructed the jury that conduct in violation of a section of the Vehicle Code is negligence as a matter of law.

Plaintiffs object to the latter instruction because it was not qualified by a statement that a violation of a statutory standard creates only a presumption of negligence that may be rebutted by evidence of justification or excuse. (See *Alarid* v. *Vanier*, 50 Cal.2d 617, 621 [327 P.2d 897].) ▮ Plaintiffs, however, requested the instruction of which they complain and it was incumbent upon them to offer any desired modification. (*Ornales* v. *Wigger*, 35 Cal.2d 474, 479 [218 P.2d 531]; *Townsend* v. *Butterfield*, 168 Cal. 564, 569 [143 P. 760].) ▮ Moreover, there is nothing in the record to suggest a justification or excuse for Witt's violation of either Vehicle Code provision except that he was a law enforcement officer investigating a driver suspected of intoxication. Whether this circumstance justified violating statutory standards of conduct was presented to the jury in an instruction on Vehicle Code section

454, which grants exemptions to authorized emergency vehicles under certain conditions.

Plaintiffs contend that the court should not have given a general instruction on contributory negligence or the instructions on Vehicle Code sections 544 and 526, on the ground that there is no substantial evidence of contributory negligence.

There is conflicting evidence as to whether Witt changed lanes. Defendant testified that Witt did so when the cars were only about 100 feet or six car lengths apart. Witt testified that he first saw defendant's headlights in his rearview mirror about three or four seconds before the impact. The jury could therefore infer that Witt had changed lanes and moved into the path of defendant's car without determining whether he could do so with safety.

There is also substantial evidence to justify the instruction on section 544, which requires an appropriate signal before a sudden decrease in speed. Witt testified that after he had drawn alongside the Dodge he "started to decelerate so that I could pull behind the car that we were pulling over." The operator of the Dodge testified that after he saw the flash of Grossman's flashlight he drove off the roadway to the right and stopped. It could be inferred that Witt decelerated rapidly to get behind the Dodge. Defendant testified that after the police car moved into his lane its brake lights went on, that when he was approximately 50 to 75 feet behind it its red roof lights went on, and that he then attempted to stop. It was for the jury to determine in the light of this evidence whether the brake lights and roof lights constituted an "appropriate signal" within the meaning of section 544, subdivision (c).

At plaintiffs' request the trial court gave an instruction on Vehicle Code section 454 (now §§ 21055, 21056), which exempts drivers of authorized emergency vehicles from observing specified provisions of the Vehicle Code (including §§ 544 subd., (c) and 526, subd. (a)) under certain conditions.[1]

---

[1]Section 454 provides that the "exemptions shall apply whenever any said vehicle is being driven in response to an emergency call . . . or when used in the immediate pursuit of an actual or suspected violator of the law"; that they "shall apply only when the driver of said vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to others"; but that they "shall not relieve the driver of any said vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall the provisions of this section protect any such driver from the consequences of an arbitrary exercise of the privileges declared in this section."

Plaintiffs maintain that all of the conditions set forth in this section were met and that the trial court was therefore precluded as a matter of law from submitting the defense of contributory negligence to the jury.

The court instructed the jury that the police car was an authorized emergency vehicle. Although it may be assumed that the other conditions of section 454 were met, the jury still had to determine whether Witt operated the vehicle "with due regard for the safety of all persons using the highway."

The "due regard" clause of section 454 requires the operator of an emergency vehicle to give a suitable warning to afford other users of public highways an opportunity to yield the right of way. (*Lucas* v. *City of Los Angeles,* 10 Cal.2d 476, 483 [75 P.2d 599]; *Raynor* v. *City of Arcata,* 11 Cal.2d 113, 117 [77 P.2d 1054]; *Reed* v. *Simpson,* 32 Cal.2d 444, 450 [196 P.2d 895].) An operator of an emergency vehicle does not meet the requirements of the "due regard" clause if he does not give the required warning until a collision is inevitable. In view of the conflicting evidence as to whether Witt turned on the roof light soon enough to warn defendant to stop his vehicle or yield the right of way, the question whether Witt showed "due regard for the safety of all persons using the highway" was properly submitted to the jury. (See *West* v. *City of San Diego,* 54 Cal.2d 469 [6 Cal.Rptr. 289, 353 P.2d 929]; *Reed* v. *City of San Diego,* 77 Cal.App.2d 860, 867-868 [177 P.2d 21].)

Plaintiffs complain of an instruction that plaintiffs had the burden of proving that the negligence of defendant was *the* proximate cause of plaintiffs' injuries. The use of the definite instead of the indefinite article was not prejudicial in the light of the instruction that the acts and omissions of two or more persons may concur in causing an injury and that each such act or omission is regarded as a proximate cause. (*Squier* v. *Davis Standard Bread Co.,* 181 Cal. 533, 537 [185 P. 391]; *Hellman* v. *Los Angeles Ry. Corp.,* 135 Cal.App. 627, 645 [27 P.2d 946, 28 P.2d 384]; *Dieterle* v. *Yellow Cab Co.,* 53 Cal.App. 2d 691, 694-696 [128 P.2d 132]; *Matsumoto* v. *Renner,* 90 Cal. App.2d 406, 410 [202 P.2d 1051].)

The trial court refused to give the following instruction requested by plaintiffs: "When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury, or requires that in the line of his duty, he take risks which ordinarily a reasonably prudent person could avoid, the necessities of such a situation,

insofar as they limit the caution that he can take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care." There is no evidence that investigating the driver of the Dodge required the taking of risks that ordinarily a reasonably prudent person could avoid. Moreover, the court instructed the jury that negligence is relative and not absolute, that allegedly negligent conduct must be considered in the light of all the surrounding circumstances, and that the amount of caution required for ordinary care depends upon the danger that is or should be apparent to the actor in the particular situation. (*Cf. Fry* v. *Sheedy*, 143 Cal.App.2d 615, 627 [300 P.2d 242].)

During cross-examination of an investigating officer, defendant's counsel read the following statement given by Witt and contained in the witness's accident report: "I observed a slow-moving vehicle northbound on Sepulveda. I followed this vehicle and observed it being driven straight but slow. I pulled up alongside this vehicle and looked at the driver and decided to interrogate him. At this time I turned on the red lights." The witness then testified that he remembered Witt's making this statement to him. On redirect examination plaintiff's counsel offered the remainder of Witt's statement, but defendant's objection to its admission was sustained. In this part of the statement[2] Witt stated that after turning on the roof lights he looked in the rear-view mirror and saw a vehicle coming toward him at approximately 65 miles per hour and that this vehicle then collided with the squad car. Plaintiffs, relying upon Code of Civil Procedure section 1854, contend that the trial court's ruling was prejudicial error. ▮ That section provides in part that "when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing, which is necessary to make it understood, may also be given in evidence." In *People* v. *Kent*, 135 Cal.App.2d 422, 428 [287 P.2d 402], the court stated: "The rule that where part of a conversation has been shown in testimony the remainder of that conversation

---

[2]We quote the words in the report immediately following the part read on cross-examination: "I looked in the rear-view mirror and saw a vehicle coming up behind me at a high rate of speed, approximately 65 m.p.h. I thought this vehicle might not be able to stop as it was in the same traffic lane (N-1) as I was, and as I was only going about 10 m.p.h., I was going to go forward and get over to the right, out of its way. I then realized this car was coming too fast and it was going to hit my car, so I moved to the left so our car would not hit the car we were intending to stop. The car coming behind me started to skid and then hit us."

may be brought out by the opposing party, is necessarily subject to the qualification that the court may exclude those portions of the conversation not relevant to the items thereof which have been introduced." (See also *People* v. *McCoy,* 25 Cal.2d 177, 187 [153 P.2d 315] ; *People* v. *Kiser,* 24 Cal.App. 540, 546 [141 P. 1078].) It is plaintiff's theory that the excluded part of Witt's statement is relevant in that it tends to explain when he turned on the roof lights in relation to the moment of the impact.

 The part of Witt's statement that was read by defendant's counsel is an admission that Witt did not turn on the roof lights until after he had driven the police car alongside the Dodge. The excluded part in no way tended to explain the inconsistencies between this admission and Witt's testimony. (See *People* v. *Albert,* 182 Cal.App.2d 729, 741 [6 Cal.Rptr. 473].) Although the excluded part may indirectly suggest that defendant may have had enough time to avoid the accident after the roof lights were turned on, the exact time sequence of events in the few moments preceding the accident was the subject of abundant testimony. (See *Long* v. *California-Western States Life Ins. Co.,* 43 Cal.2d 871, 881-882 [279 P.2d 43].) Thus, it cannot be said that the trial court abused its discretion in excluding the part of Witt's statment offered by plaintiffs. This is not a case where a party's admission was contained in a longer statement and was seriously qualified by other language in that statement. In such a case, of course, the party making the admission is seriously prejudiced if he is not permitted to have the qualifying language submitted to the jury along with the admission. (*Risdon* v. *Yates,* 145 Cal. 210, 212-214 [78 P. 641].) Nor is this a case where counsel took part of a statement out of context and attempted to twist it into a fatal admission. (See *Rosenberg* v. *Wittenborn,* 178 Cal. App.2d 846 [3 Cal.Rptr. 459].)

 Plaintiffs contend that the trial court committed prejudicial error in ruling that a hospital record containing a diagnosis of defendant could not be admitted in evidence unless the part of the record that referred to his condition as "HBD 2-plus" was deleted. Without an accompanying explanation, this cryptic, technical reference could serve only to confuse and mislead the jury.

 Plaintiff Grossman correctly contends that he was prejudiced because the instructions relating to contributory negligence were submitted to the jury without an explanation

that the issue of contributory negligence did not have any bearing upon his cause of action. At defendant's request, the trial court gave the following instruction: ''Contributory negligence is negligence on the part of *a person who thereafter becomes a claimant for damages* for alleged injury to his person or his property and which negligence, concurring with the negligence of another, contributes in some degree in proximately causing the damage of which the claimant thereafter complains. *One who is guilty of contributory negligence* may not recover from another for the injury suffered.'' (Italics added.) In another instruction the jury was told that if ''the plaintiff'' was contributively negligent and that negligence was a proximate cause of his injuries the verdict must be for defendant.

Defendant did not plead Grossman's contributory negligence and he concedes that imputed negligence was not in issue. There is no evidence that Grossman was contributively negligent. ▉▉▉▉ When a passenger and driver bring an action against a third party it is prejudicial error to give an instruction on the passenger's contributory negligence if that defense is not supported by substantial evidence and if there is substantial evidence that the driver and defendant were negligent. (*Kollert* v. *Cundiff*, 50 Cal.2d 768, 771-772 [329 P.2d 897]; see also *Miller* v. *Peters*, 37 Cal.2d 89, 95 [230 P.2d 803]; *Christensen* v. *Bocian*, 169 Cal.App.2d 223, 229 [336 P.2d 1018]; *Dike* v. *Golden State Co.*, 125 Cal.App.2d 6, 13-15 [269 P.2d 619].)

▉▉▉▉ Defendant seeks to avoid the force of these cases by invoking the doctrine of invited error. He correctly points out that plaintiffs requested an instruction given by the trial court that stated in part that ''the instructions given you apply to each plaintiff unless otherwise stated.'' The fallacy in defendant's argument is that plaintiffs do not contend that any error was committed in the giving of this instruction. It was requested along with another instruction stating that if the jury should find that a plaintiff is entitled to recover it must assess the damage of each separately and return a verdict in a separate amount for each. Plaintiffs' request for these two instructions in no way invited the erroneous instruction requested by defendant submitting the issue of Grossman's contributory negligence to the jury.

To the extent that the judgment against the city is dependent upon plaintiff Witt's appeal it must be affirmed, for Witt's contentions are without merit. In returning a general verdict for defendant the jury must have found that defend-

ant was not negligent or that Witt was contributively negligent. If defendant was not negligent, he is, of course, not liable to the city; if he was negligent but the jury found that Witt was contributively negligent, his negligence is imputed to his employer, the city, and bars its recovery for the damage to the automobile and the payments made to Witt for compensation and medical expenses. (*Globe Indemnity Co.* v. *Hook,* 46 Cal.App. 700 [189 P. 797]; Prosser, Torts (2d ed. 1955) p. 299.) The city does not dispute this conclusion.

The city contends, however, that the negligence of Witt, if any, is not a defense to its cause of action to recover the amount it paid Grossman in workmen's compensation.

When an employee's injuries are compensable under the Workmen's Compensation Act, such compensation is his exclusive remedy against his employer. (Lab. Code, § 3601.) Labor Code section 3852, however, authorizes an action by an employee against a third party whose negligence was a proximate cause of his injuries.

There are three ways in which an employer who becomes obligated to pay compensation to an employee may recover the amount so expended against a negligent third party. He may bring an action directly against the third party (Lab. Code, § 3852), join as a party plaintiff or intervene in an action brought by the employee (Lab. Code, § 3853), or allow the employee to prosecute the action himself and subsequently apply for a first lien against the amount of the employee's judgment, less an allowance for litigation expenses and attorney's fees (Lab. Code, § 3856, subd. (b)). None of these provisions gives any indication as to whether or not the employer's right to reimbursement is defeated when the employee's injuries are caused by the concurring negligence of the employer or another of his agents and a third party.

In *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 434-435 [218 P.2d 17], affirming a judgment recovered by an employee against a third party tortfeasor, this court held that the defendant was not entitled to have the judgment reduced by the amount of compensation that the plaintiff had received from his employer's insurance carrier. In so holding, the court allowed the carrier to assert its lien under Labor Code section 3856 even though the parties conceded that the employer ''conducted his business in a grossly negligent manner.'' (35 Cal.2d at p. 411.) The court relied upon *Pacific Indemnity Co.* v. *California Electric Works, Ltd.,* 29 Cal.App. 2d 260, 270-271 [84 P.2d 313], where it was held that a third

party tortfeasor could not assert the defense of the employer's concurrent negligence when the employer's carrier asserted its lien against the employee's judgment. (See also *Milosevich* v. *Pacific Electric Ry. Co.*, 68 Cal.App. 662, 668-669 [230 P. 15].) This defense was equated with an attempt to secure contribution between joint tortfeasors. Since California then followed the common-law rule denying contribution (*Smith* v. *Fall River Joint Union High School Dist.*, 1 Cal.2d 331, 339 [34 P.2d 994] ; *Adams* v. *White Bus Lines*, 184 Cal. 710 [195 P. 389]), the court pointed out that if there were no Workmen's Compensation Act the defendant could not shift part of the responsibility for the judgment rendered against it to the employer's carrier. Accordingly, the court framed the question before it as "whether or not the Workmen's Compensation Act, and the payment of certain sums thereunder, operate to *relieve* the [defendant] . . . of a portion of its adjudicated responsibility." (29 Cal.App.2d at p. 266.) (Italics added.) This language indicates that in adherence to the principle underlying the rule denying contribution, the court would not accept the defendant's defense unless it could point to an express provision in the Workmen's Compensation Act declaring that an employer or its carrier could not assert its lien when the concurrent negligence of the employer contributed to the employee's injuries. The enactment of Code of Civil Procedure sections 875-880 in 1957, however, abrogated the rule of noncontribution that existed when the *Pacific Indemnity* and *Finnegan* cases were decided. Thus, today, in the absence of the Workmen's Compensation Act, a negligent third party would be allowed contribution against a concurrently negligent employer if the conditions of sections 875-880 are met. As a result of the enactment of these sections, the reasoning in the *Pacific Indemnity* case, which in turn was relied upon by this court in the *Finnegan* case, has been rendered obsolete.

A majority of jurisdictions that have passed on the question have held that a third party tortfeasor cannot assert the concurrent negligence of the employer as a defense, whether the employer, the employer's carrier, or the employee has brought the action against him. (*Cyr* v. *F. S. Payne Co.* (D.C. Conn.), 112 F.Supp. 526, 532; *Williams Bros. Lumber Co.* v. *Meisel*, 85 Ga.App. 72 [68 S.E.2d 384, 388] ; *Fidelity & Casualty Co.* v. *Cedar Valley Electric Co.*, 187 Iowa 1014 [174 N.W. 709, 711] ; *City of Shreveport* v. *Southwestern Gas & Electric Co.*, 145 La. 680 [82 So. 785, 787] ; *General Box Co.* v. *Missouri Utilities Co.*, 331 Mo. 845 [55 S.W.2d 442, 445] ; *Utley* v. *Tay-*

*lor & Gaskin,* 305 Mich. 561 [9 N.W.2d 842, 847-848] ; *Graham* v. *City of Lincoln,* 106 Neb. 305 [183 N.W. 569] ; *Royal Indemnity Co.* v. *Southern California Petroleum Corp.,* 67 N.M. 137 [353 P.2d 358, 363] ; *Baker* v. *Traders & General Ins. Co.* (10 Cir.) 199 F.2d 289 [Oklahoma law] ; *Clark* v. *Chicago, M. St. P. R. Co.,* 214 Wis. 295 [252 N.W. 685, 689].) Most of these cases have reasoned that the employer should be able to get reimbursement from the third party tortfeasor despite his own concurrent negligence because the relevant Workmen's Compensation Act did not expressly preclude his recovery. Others have reasoned that the employer's rights against the third party are precisely the same as the rights of the employee; since the employee is not barred, neither is the employer.

A few jurisdictions, however, notably Pennsylvania and North Carolina, have not allowed the negligent employer to get reimbursement from the third party tortfeasor. (See also *Rylander* v. *Chicago Short Line Ry. Co.,* 17 Ill.2d 618 [161 N.E.2d 812] ; *Alaimo* v. *Du Pont,* 11 Ill.App. 238 [136 N.E.2d 542] ; *Thornton Bros. Co.* v. *Reese,* 188 Minn. 5 [246 N.W. 527] ; *Baccile* v. *Halcyon Lines* (3 Cir.) 187 F.2d 403, revd. on other grounds, *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.,* 342 U. S. 282 [72 S.Ct. 277, 96 L.Ed. 318].) When an employee recovers a judgment against a third party tortfeasor, Pennsylvania allows the third party to secure contribution from the negligent employer, limited to the amount of compensation payments the employer has made to the employee. (*Maio* v. *Fahs,* 339 Pa. 180 [14 A.2d 105, 110] ; *Brown* v. *Dickey,* 397 Pa. 454 [155 A.2d 836, 840].) North Carolina, on the other hand, holds that the third party is entitled to have the judgment against him reduced by the amount of compensation paid to the injured employee if he can prove that the concurrent negligence of the employer contributed to the injuries suffered by the employee. (*Brown* v. *Southern Ry. Co.,* 204 N. C. 668 [169 S.E. 419] ; *Essick* v. *City of Lexington,* 233 N. C. 600 [65 S.E.2d 220, 225] ; *Lovette* v. *Lloyd,* 236 N.C. 663 [73 S.E.2d 886, 892].)

We find the reasons supporting the North Carolina rule persuasive. In the *Brown* case, *supra,* it was stated that "when the employee or his estate has been satisfied, and the employer seeks to recover the amount paid by him, from such third party, his hands ought not to have the blood of the dead or injured workman upon them, when he thus invokes the impartial powers and processes of the law." (169 S.E. at p.

420.) The *Lovette* case, *supra*, reiterated the same argument in more moderate language: "It is contrary to the policy of the law for the employer, or his subrogee, the insurance carrier, to profit by the wrong of the employer." (73 S.E.2d at pp. 891-892.) (See also *Stark* v. *Posh Construction Co.*, 162 Pa. Super. 409 [162 A.2d 9, 12].) This policy should prevail here since there is nothing in the Labor Code to suggest that the Legislature contemplated that a negligent employer could take advantage of the reimbursement remedies that those sections provide. In the absence of express terms to the contrary, these provisions must be deemed to be qualified by Civil Code section 3517 which provides that "No one can take advantage of his own wrong." Thus, whether an action is brought by the employer or the employee, the third party tortfeasor should be able to invoke the concurrent negligence of the employer to defeat its right of reimbursement, since, in either event, the action is brought for the benefit of the employer to the extent that compensation benefits have been paid to the employee. (See *Lovette* v. *Lloyd, supra,* 73 S.E.2d at p. 892.)

Support for this rule is found in *Baugh* v. *Rogers,* 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043], involving a plaintiff who was injured by the negligence of her employer while he was driving an automobile owned by a third party. The court held that the employer-employee relationship did not bar the employee from bringing an action against the third party under Vehicle Code section 402 [now §§ 17150-17157] (which imputes the negligence of the operator of a vehicle to its owner) and that the exclusive remedy provisions of the Workmen's Compensation Act (Lab. Code, §§ 3600-3601) did not preclude the third party owner from gaining indemnity from the employer-operator under Vehicle Code section 402.

It is true that there is no legal relationship in this case between the employer and third party comparable to the bailor-bailee relationship upon which the Baugh holding was based. Nevertheless, that case is significant because the court was not persuaded by the employer's argument that its holding deprived him of the lien granted to an employer by Labor Code section 3856. "The owner will be entitled to have credited on the judgment against him any amount paid by the operator (or his insurance carrier) by way of compensation for the injury, and the amount to be recovered by the bailor-owner from the bailee-operator necessarily will be reduced *pro tanto.*" (24 Cal.2d at p. 216.) It is evident from this language that

had the employer brought an action in his own name against the third party under Labor Code section 3852 he would not have been allowed to recover compensation payments made to the employee. Thus, when a person is entitled to indemnity against a negligent employer, the employer cannot recover reimbursement for compensation payments made to an injured employee either by asserting a lien against a judgment recovered by the employee or by bringing an action directly against the third party. (See *San Francisco Unified School Dist.* v. *California Building Maintenance Co.*, 162 Cal.App.2d 434 [328 P.2d 785] ; *cf.* Lab. Code, § 3864.) A negligent employer should be in no better position when, as here, the third party tortfeasor does not seek indemnity; to allow the employer reimbursement in either case would allow him to profit from his own wrong. Since, however, the injured employee may not be allowed double recovery, his damages must be reduced by the amount of workmen's compensation he received.

The judgment is affirmed as to plaintiff Witt and the city. The judgment is reversed as to plaintiff Grossman.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

SCHAUER, J., Concurring and Dissenting.—I find in the record no error shown to be prejudicial to either of the plaintiffs or to the intervener. Accordingly I would affirm the judgment in its entirety.

In the absence of a showing by plaintiff-appellant Grossman that the verdict against him was based on a finding that he was contributively negligent we should assume—indeed, on this record, infer—in favor of the judgment, that the verdict implies a finding that defendant was not negligent.

The handling of appeals in personal injury actions now constitutes an overly large portion of the work of this court. We should not lightly presume in favor of reversal that an error in instructions has worked a miscarriage of justice within the provisions of the Constitution, article VI, section 4½.[1]

There is no suggestion in the majority opinion that the

---

[1] "'No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'"

jury returned a special verdict finding that defendant was guilty of negligence and that plaintiff-appellant Grossman was guilty of contributory negligence; nor is there a suggestion that such plaintiff-appellant requested, and the trial court refused to instruct the jury to return, a special verdict pursuant to Code of Civil Procedure, sections 624 and 625.

In the absence of such a special finding, or of a request therefor refused by the trial court, the reversal appears to be based on unwarranted speculation and is, therefore, obnoxious to the Constitution, article VI, section $4\frac{1}{2}$. This conclusion is emphasized by the fact that the evidence strongly supports the implied finding that defendant was not guilty of any negligence proximately causing injury to the plaintiffs.

For the reasons stated the judgment of the trial court should be affirmed.

McComb, J., concurred.