[Civ. No. 10666. Third Dist. Jan. 20, 1964.]

VELTA LUCILLE DAUER et al., Plaintiffs and Respondents. v. AEROJET GENERAL CORPORATION, Defendant and Appellant.

William A. Sitton and Johnson, Davies & Greve for Defendant and Appellant.

Patrick J. McCarthy, Richard A. Case and Robert P. Brorby for Plaintiffs and Respondents.

SCHOTTKY, J.—This is an appeal by Aerojet General Corporation from a judgment awarding plaintiffs and respondents damages for the wrongful death of Edward Dauer, the husband of Velta Lucille Dauer, and the father of Edward Dauer, Jr., and Madeline Dauer, now Madeline Stanton, and from the order denying its motion for judgment notwithstanding the verdict.

Edward Dauer, an employee of D. Zelinsky & Sons, was killed as a result of burns received from an explosion in a tank in which he and another workman (by the name of Woolen) were applying Amercoat Number 23, a mixture containing volatile and inflammable solvents.

Aerojet and Zelinsky entered into a contract whereby Zelinsky agreed to apply Amercoat Number 23 to the inner surface of two new steel fuel storage tanks. The coating was to protect the surface of the tanks from the corrosive action of the fuel to be stored therein. The contract provided that Zelinsky would provide all material, labor and equipment. There was no express provision for the taking of precautions by Zelinsky in the performance of the work. Aerojet did not give Zelinsky any information or instructions regarding precautions which should be taken, though Aerojet did have knowledge of the characteristics of Amercoat Number 23. A short time prior to the incident here, a hydro sump pit was repaired with Amercoat Number 23. At all times while

Amercoat Number 23 was being sprayed a fire engine and crew were present. Aerojet furnished explosion-proof equipment, and during the spraying a blower fan was used to remove the vapors created by applying the solution.

An expert testified that the circulation of air is the best and only complete precaution to use to prevent accumulation of explosive vapors when Amercoat Number 23 is used in confined spaces. There was testimony that a tank was a hazardous area in which to apply Amercoat. As stated by respondents' expert:

"Q. Now, you will note that in the factors that I have given you I have not given you any factors as to there being any ventilation. I presume you have noted that? A. Yes. Q. Well, I'm not going to give you a ventilation factor just yet, keeping in mind the factors I have given you for the type of work that's being done at that time and that place and with the factors as I have given them to you does that place of work offer any hazards insofar as the work is being done in that place with respect to this mixture? A. Oh, yes. I think it offers very definite hazards. In the first place, it's an enclosed area, quite a tight enclosure. If there is no ventilation as you specified so that there would be no spontaneous change of air to any extent now this would be definitely in that respect. If a tank which is deliberately made quite tight as compared with a building which is never completely tight and in which there is a considerable amount of change of air between the normal type of venting thru the walls and cracks and so forth, so it is basically a more dangerous type of locality. Definitely an explosive mixture within that enclosure area and then men working, it appears there are many possible hazards, the electric cords may be a very definite hazard because the sparks can readily occur at any loose connection. They can occur between the contacts and the light bulbs themselves, they can result in other words wherever there is a possibility of a little separation of your sparks or circuit this can happen in any kind of lighting equipment unless there is special type of connections used to eliminate the possibility of such separation I would say that static would represent a very definite hazard in this kind—Q. I wonder if you would explain that Doctor. A. Well, static electricity is the sort of thing you get by friction of materials over each other. We are all very familiar with the—in connection with plastics which are much in use today, plastic seat covers. You slide across them and you get a spark when

you take hold of the door handle of the car—you walk on certain plastic or glass or other floor surfaces. Glass is one of the worst. Sometimes use them in libraries. You can get a terrific spark by walking on it. The friction of clothing against each other or against some object. These instruments will often create static sparks. They are often of minor magnitude, you couldn't notice them but nevertheless they are hot enough to ignite an explosion in many cases. Q. For example would a—the striking of a piece of metal on metal, could that possibly cause a spark? A. It can, yes. It is less likely to than striking the metal with something like sand or stone but it can. Metal itself will trigger sparks.

"Q. Now, you have mentioned these various things, static electricity and so forth. The spark that might be between a connection and a carnival type connection, a spark would any of those be capable of exploding this mixture that we have hypothecated [*sic*] that was in the air? A. All of them would be able to do it. Q. Each or any of them? A. Each or any, yes, sir. Q. All right. You mentioned the painting in a tank as compared with painting of a house. Do you deem Doctor, that this kind of work, this kind of chemical and this kind of a space is more hazardous by virtue of the fact that the tank is airtight so to speak. That in and of itself makes this situation more hazardous from an explosion standpoint? A. Certainly does. I think it generally recognizes that working inside tanks is always more hazardous than working out of doors or ordinary enclosures. In the petroleum industry of course there is great hazards for people who have to go into tanks. They always have to have very special precautions both from the standpoint of the fires, explosions and poisons. You can become poisoned from many materials kept in tanks."

The tank in which the accident happened was 30 feet in diameter and 24 feet from base to top. It had a floating roof, which was designed to float up and down as the fuel in the tank was increased or decreased. In order to coat the higher surface of the interior the roof was lowered, thus exposing the surface to be worked on. In order to work on the lower surface the roof was raised and supported by some sort of stanchions at an elevation of about 7 feet. Thus, when working in the lower area the painters were in a dark, confined compartment. Under these conditions the danger was apparent that heavier than air inflammable gases exuding from the drying paint would pocket and concentrate in the lower part of the tank unless special precautions were taken.

The explosion occurred while Dauer and a coworker (Woolen) were applying Amercoat Number 23 to the lower interior of the tank. No fan for the circulation of air or blower was used nor was explosion-proof lighting equipment used.

We are satisfied that the record discloses substantial support for a finding of the jury that respondent Aerojet was liable for the damage caused by the failure of Zelinsky to exercise reasonable care. ■ For as stated in *Woolen* v. *Aerojet General Corp.*, 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708] (a case in which the facts were practically the same as in the case at bench), our Supreme Court said at page 410: "The evidence is sufficient to support the judgment. The applicable rule is set forth in section 413 of the Restatement of Torts as follows: 'One who employs an independent contractor to do work which the employer should recognize as necessarily creating, during its progress, conditions containing an unreasonable risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the absence of such precautions, if the employer (a) fails to provide in the contract that the contractor shall take such precautions (as to which see § 416), or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.' This is the law in California. (*Courtell* v. *McEachen*, 51 Cal. 2d 448, 456 [334 P.2d 870].)"

The principal contention of appellant is that prejudicially erroneous instructions requested by respondents were given to the jury. We have concluded that this contention must be sustained.

■ The jury was instructed relative to the applicability of certain provisions of the Labor Code imposing duties upon an employer concerning safety of employment and place of employment. The jury was told that every employer was required to furnish a safe place of employment and furnish and use safety devices and safeguards and use practices reasonably adequate to insure safety.

The jury was then instructed: "If you find from a preponderance of the evidence that a dangerous condition existed in the place of employment when it was turned over to D. Zelinsky and Sons then, in such event, I instruct you the term employer as used in *these* sections of the Labor Code read to you applied to Aerojet General Corporation under the evidence produced at this trial and the term 'employee' applied to EDWARD DAUER while he was engaged in the

painting of the tank at the time of the explosion on August 25, 1956, and in such connection I further instruct you that if Aerojet General Corporation violated any of the statutes just read to you, a presumption arises that Aerojet General Corporation was negligent. This presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable or justifiable.

'To prove that a violation of a statute was excusable or justifiable so as to overcome the presumption of negligence, the evidence must support a finding that the person who violated the *Labor Code Sections* did what might reasonably be expected of a person of ordinary prudence who desired to comply with the law acting under similar circumstances.''

■ The giving of this instruction was error, for as stated in *Woolen* v. *Aerojet General Corp., supra,* at page 413: ''... However, an owner of premises who does nothing more with respect to the work of an independent contractor than exercise general supervision and control to bring about its satisfactory completion is not an employer within the meaning of the safety provisions of the Labor Code. It is not the responsibility of such an owner to assure compliance with all applicable safety provisions including those relating to the manner in which the independent contractor performs the operative details of the work. (*Kuntz* v. *Del E. Webb Constr. Co., ante,* pp. 100, 106 [18 Cal.Rptr. 527, 368 P.2d 127].) Although the jury could find from the evidence that defendant was under a duty to exercise reasonable care to provide in some manner for the taking of precautions as required by the rule set forth in section 413 of the Restatement of Torts, the Labor Code was not the measure of defendant's responsibility. The instructions relating to the Labor Code and the safety orders were erroneous.''

■ There can be no issue of fact on the question whether Zelinsky was an independent contractor and the jury was so instructed. Respondents attempt to justify the instruction on the theory that there was evidence that the place of employment was dangerous when turned over to Zelinsky. If so, Aerojet would be subject to the Labor Code provisions. (See *Johnson* v. *A. Schilling & Co.,* 170 Cal.App.2d 318, 323 [339 P.2d 139]; *Gonzales* v. *Robert Hiller Constr. Co.,* 179 Cal. App.2d 522 [3 Cal.Rptr. 832].) Respondents rely on the testimony of experts that the application of Amercoat Number 23 in a tank is hazardous. But there was nothing hazard-

ous about the tank when it was turned over to Zelinsky—the hazard only occurred when the work commenced, especially without proper precautions being taken.

It is undisputed that the premises of Aerojet, including its tank in which the explosion occurred, were safe and contained no hidden dangers. It was only after Zelinsky began to perform its contract that the tank became an unsafe place to work, and the tank became unsafe only because of the negligent manner in which the work was performed.

Of course, the instruction was drawn as a formula instruction, conditioned upon a jury finding of an unsafe condition when the premises were turned over to the independent contractor. Thus the instruction was not incorrect as an abstract statement of law. Since, however, there was no evidence of unsafe condition to support the instruction, it was error to give it. (*Davenport* v. *Stratton,* 24 Cal.2d 232, 254 [149 P.2d 4].)

Appellant Aerojet also excepts to two instructions which relate to the duty of Aerojet as an invitor of Dauer. These instructions in part indicated that Aerojet had a duty to keep the premises in a condition reasonably safe for the invitee. These instructions were misleading—they implied a mandatory duty to inspect. In holding that a similar instruction was erroneous, our Supreme Court in *Woolen* v. *Aerojet General Corp., supra,* said at pages 411 and 412:

''The jury was instructed that if defendant was an invitor of Woolen, it had the duty to make reasonable inspections to see that the tank remained a reasonably safe place for him to work. This instruction, in making a duty to inspect mandatory without qualification, failed to take into consideration the elements required for liability under the rule of section 413 of the Restatement of Torts, such as whether the work was necessarily dangerous in the absence of special precautions. It also failed to take into consideration whether or not defendant had such control over the premises and the work as would give rise to a duty to inspect apart from the rule of section 413. The instruction was therefore erroneous.''

Respondents state that a similar instruction was offered by Aerojet. However, the record as augmented shows that the instruction which had been modified by the court was withdrawn and then offered by the respondents.

Appellant's final contention is that the trial court was guilty of an abuse of discretion when it refused Aerojet permission to amend its answer to allege that Dauer's employer was negligent in failing to use proper safety appliances.

The purpose of the amendment was to permit Aerojet to apply the principle enunciated in *Witt* v. *Jackson,* 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], decided December 4, 1961, after this case was set for trial. *Witt* v. *Jackson* held that a negligent employer who had intervened in the employee's suit against a third party tortfeasor could not recover his workmen's compensation payments from the third party. (If there were no negligence on his part, the employer has a statutory right to indemnity against a negligent tortfeasor for workmen's compensation paid or to be paid to an injured employee.) In *Witt,* in order to prevent double recovery, the Supreme Court reduced the amount of the judgment in favor of the employee by the amount of workmen's compensation that he was entitled to receive.

The motion to amend the answer was made on January 18, 1962. It was denied by Judge Desmond on January 22, 1962. The motion was renewed before the trial judge and again denied. We do not believe that it is necessary to decide whether an abuse of discretion was shown under the facts of this case. At oral argument counsel for plaintiffs did not seriously object to the argument that Aerojet was entitled to a setoff for the workmen's compensation benefits paid. If a stipulation to this effect were made, there would be no need to join Zelinsky. If such a stipulation were not made, then Aerojet would be entitled to have Zelinsky joined. (*Chick* v. *Superior Court,* 209 Cal.App.2d 201 [25 Cal.Rptr. 725]; *Tate* v. *Superior Court,* 213 Cal.App.2d 238 [28 Cal.Rptr. 548].)

We have reached the conclusion that we must reverse the judgment because in the light of the entire record the erroneous instructions were most prejudicial to Aerojet. We are convinced that said instructions would not have been given by the trial court if the case had not been tried before the decision of the Supreme Court in *Woolen* v. *Aerojet General Corp., supra.*

The order denying appellant's motion for judgment notwithstanding the verdict being a nonappealable order the appeal therefrom is dismissed.

The judgment is reversed.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied February 13, 1964, and respondents' petition for a hearing by the Supreme Court was denied April 1, 1964. Peters, J., was of the opinion that the petition should be granted.