WRIGHT, comptroller-general, *v.* SOUTHERN BELL TELE-PHONE AND TELEGRAPH COMPANY.

1. A provision in a tax act that persons engaged in a given business, if the revenues derived from their ad valorem tax, together with all taxes on franchises of such person, do not amount to two and a half per cent. of the gross receipts of such person from such business, shall pay, as an occupation tax, such a per centum upon its gross receipts as will, when added to the ad valorem taxes, State and county, including all taxes on franchises, be equal to two and a half per centum upon the gross receipts, is lacking in uniformity and invalid.

2. If a statute is in part valid and in part invalid, and the objectionable portion is so connected with the general scheme of the statute that it can not be stricken out and effect given to the legislative intent, the whole statute must fall.

Argued November 5,—Decided December 15, 1906.

Injunction. Before Judge Pendleton. Fulton superior court. September 13, 1906.

The Southern Bell Telephone and Telegraph Company brought its petition against William A. Wright as comptroller-general of the State of Georgia, alleging, that it was a corporation doing business as a telephone company in various counties, cities, and towns of the State of Georgia; and that under the general tax act of 1902 (Acts 1902, p. 30) a tax was levied upon telephone and other companies in the following language: "That all express, including railroad companies doing an express, telephone, or telegraph business, and all telephone or telegraph companies, person or persons doing an express, telegraph, or telephone business, through their president, general manager, or agent having control of the company's affairs in this State, shall be required to make returns of all property of said company located in this State, to the comptroller-general; and the law now in force providing for the taxation of railroads in this State shall be applicable to the assessment and collection of taxes from said telegraph and telephone, express, and

railroad companies doing an express, telephone, or telegraph business as above stated; and if the revenue derived from the ad valorem tax raised under the provisions of this section, together with all taxes on the franchises of said person or corporation, does not amount to two and a half per cent. of the gross receipts of said companies, as shown by reports of said companies to the comptroller-general, now required by law, the said comptroller-general is hereby required to collect, as an occupation tax from said companies, such a per centum upon said gross receipts as will, when added to the ad valorem tax, State and county, including all taxes on franchises, equal to two and a half per centum upon said gross receipts. Said companies doing such business shall make a quarterly return on both as follows: On the last day of March, June, September, and December, in each year, to the comptroller-general, showing a full amount of the gross receipts during the quarter ending on such dates; and said taxes herein levied on said gross receipts, as shown by said quarterly returns, shall be paid by the respective persons or companies to the comptroller-general at the same time of making such returns. The gross receipts herein named shall be construed to mean the full amount of all money received from all business done within this State. If any person, superintendent, agent, or president, as the case may be, whose duty it is to make returns under this section, shall fail to do so within thirty days after the time herein required, such person, superintendent, agent, or president shall be liable to indictment, and upon conviction shall be punished as prescribed in section 1039, volume 3, of the Code of 1895."

Plaintiff alleged that it has duly returned all of its property and franchises for taxation, in terms of the law, and paid all taxes on the same to the State and the various political divisions thereof; that notwithstanding this the defendant has demanded that the plaintiff shall pay an occupation tax for each of the years 1903 and 1904 of two and a half per cent. of its gross receipts in the State of Georgia, less the amount which has already been paid for taxes as above referred to, and has threatened to issue execution for such tax against the plaintiff. It is alleged that the threatened action of the comptroller-general is illegal for various reasons, among them being that the occupation tax is not levied in conformity with the provision of the constitution of the State of Georgia, which declares

that "all taxation shall be uniform upon the same class of subjects, and ad valorem, on all property subject to be taxed within the territorial limits of the authority levying the tax." Civil Code, § 5883. The prayer was that the comptroller-general be enjoined from issuing the execution and enforcing the same against the plaintiff. When the application for injunction came on for a hearing the defendant showed, for cause against the granting of the injunction, both a demurrer and an answer to the petition. The judge granted the injunction, and the defendant excepted.

*John C. Hart, attorney-general,* for plaintiff in error.

*Hunt Chipley, Lamar & Callaway, McDaniel, Alston & Black,* contra.

COBB, P. J. (After stating the facts.) There is no controversy as to the character of the tax involved in this case. Both the attorney-general and counsel for the plaintiff agree that the tax levied is not a property tax but an occupation tax. While the General Assembly has no power to classify property for taxation, it is authorized to classify occupations. *McGhee* v. *State,* 92 *Ga.* 25; *Cutliff* v. *Albany,* 60 *Ga.* 597. But when a classification is made, the tax levied must be uniform upon each member of that class. *Mayor of Savannah* v. *Weed,* 84 *Ga.* 685; *Singer Manufacturing Co.* v. *Wright,* 97 *Ga.* 114. In the opinion in the case last cited there is a dictum to the effect that if the right to classify at all is conceded, an arbitrary classification would not violate the rule that all taxation should be uniform. The classification in that case was held, however, to be neither arbitrary nor unreasonable. The better view seems to be that a classification must be reasonable and natural. *City of Atlanta* v. *Jacobs,* 125 *Ga.* 523; *Mutual Association* v. *Augusta,* 109 *Ga.* 79. The grouping of express companies, telephone and telegraph companies, and persons engaged in the express, telephone, or telegraph business, into one class, for the purpose of levying an occupation tax, would not be an unreasonable or arbitrary classification. It is therefore to be determined whether this class, which the General Assembly has made, is subject to a uniform burden, within the meaning of the constitution, under the tax levied in the section of the act now in question. It is now settled in this State that an occupation tax may be lawfully created by imposing a tax upon the gross earnings of a business. *Mutual Association* v. *Augusta,* 109 *Ga.* 78; *Atlanta Association* v. *Stewart,*

109 *Ga.* 80.    But when an occupation tax of this character is levied, uniformity is still required; and every member of the class having the gross earnings subject to taxation must pay the same rate on its gross receipts.    The act in question does not levy a tax of two and a half per cent. on the gross receipts of all the companies named in the class; but the tax levied on each company or person is ascertained by deducting the amount of the ad valorem tax paid by the company or person from the sum which would represent two and a half per cent. on its gross earnings.    That is, if the ad valorem tax paid by the company is greater than the sum which would represent two and a half per cent. on its gross earnings, the company pays no occupation tax whatever.    It may be said, that, properly construed, this act subdivided the companies and persons named into two classes; the first class consisting of those whose gross receipts were such that two and a half per cent. of the same would be less than the ad valorem tax paid by them, and the second class consisting of those whose gross earnings were such that two and a half per cent. on the same would make a sum greater than the ad valorem tax paid by them.    Even if this subclassification can be properly derived from the act, it is not altogether clear that it would be reasonable; but for the purposes of this case, and for this occasion only, let this subclassification stand.    The plaintiff belongs to the second class in this subclassification; and it must appear that the tax levied is uniform upon each member of the subclass, before it can be upheld.  · There is· no uniformity whatever in the tax levied upon the class made up in this manner.    A stated amount, as an occupation tax upon each member of the class, would be uniform.    The same percentage upon the gross receipts, without abatement or deduction, would also be uniform.    But when one company or person is allowed a deduction of one amount, and another of still another amount, the amount of deduction not being fixed by any uniform rule, but by merely ascertaining the amount of tax paid by such company or person on the property that it might own, the scheme is entirely lacking in that uniformity which the constitution requires.    The General Assembly could levy an occupation tax upon a business of the character involved of a stated amount, and could, for reasons satisfactory, allow a uniform abatement of this occupation tax, either in a given amount, or in a given percentage, or the like, and the tax would still be uniform; but if

the General Assembly were to levy such a tax and allow an abatement of one sum to one company on account of the peculiar situation of that company, and still another sum to another company on account of its peculiar situation, it would seem that no one would contend that the companies would be taxed uniformly within the meaning of the constitution. So, in the present case, a tax of two and a half per cent. on the gross receipts of all companies embraced within the class would be uniform and valid. A deduction, for satisfactory reasons, from this tax, of a given percentage, applicable alike to all members of the class, would not destroy its uniformity. But when the deduction provided by the act is due to the peculiar situation of each company, that is, the amount of property owned by it, something in which the members of the class as a whole do not participate, and is a matter of no concern to any one except each individual member of the class, thus imposing a large tax upon one member and a small tax upon another member, uniformity is destroyed, the constitutional scheme is violated, and the General Assembly has passed beyond its legitimate bounds.

It may be said that that part of the act providing that the ad valorem tax shall be deducted from the gross receipts tax, in determining the amount of occupation tax, should be eliminated from the act if this renders the act invalid for the want of uniformity. An act may be valid in part and invalid in part; and if that which is invalid can be eliminated therefrom without destroying the legislative scheme, and when eliminated the remaining portion of the act would clearly carry out the intent of the lawmaking power, the courts are authorized to eliminate the invalid part and uphold the remaining portion of the act. But if that which is invalid is so interwoven into the scheme of the act that if it be eliminated the legislative scheme, as indicated by the act, will entirely fail, then no elimination by the courts can be had, and the whole act must fall. *Cain v. Smith,* 117 *Ga.* 902 (4). The purpose of the General Assembly was not to levy a uniform tax of two and a half per cent. on the gross receipts of all the persons within the class taxed. The legislative purpose was to tax some one amount and some another; the amount to be determined by deducting the sum of the ad valorem and franchise taxes of each company from a sum which would represent two and a half per cent. of its gross receipts. To eliminate the deduction which the General Assembly has provided

for would destroy·altogether the legislative scheme. There is no way to determine whether, with this deduction ·eliminated, the General Assembly would have levied a uniform tax. upon all the persons within the class of two and a half per cent. upon their gross receipts. Such being the character of that part of the act which is invalid, no alternative is before us than to declare that the scheme of taxation in the section of the act under consideration, so far as it relates to an occupation tax, is in violation of the constitution; and that the trial judge correctly enjoined the enforcement of the tax.

*Judgment affirmed. All the Justices concur, except Beck, J., disqualified.*