33769. WILLIAMS BROS. LUMBER CO. *v.* MEISEL *et al.*
33782. MEISEL *v.* WILLIAMS BROS. LUMBER CO. *et al.*

DECIDED DECEMBER 4, 1951.

*Andrews, Nall & Sterne, Thomas E. McLemore,* for plaintiff in error.

*Israel Katz, W. Neal Baird, Neely, Marshall & Greene, Haas & Hurt, Howard, Tiller & Howard,* contra.

FELTON, J. 1. Special ground four of the amended motion alleges that the court erred in refusing to admit testimony that the deceased stated, about ten minutes after he was struck and while he was still lying on the spot where he was struck, that the taxicab was "driving fast." It is contended that such testimony should have been admitted as being a part of the res gestae. Whether or not such statement by the deceased was a part of the res gestae, we feel that the statement should not have been admitted into evidence because it was too indefinite to be of probative value as to the speed of the taxicab, in view of the more definite testimony of the witness Litton that the taxi-

cab was traveling at 25 miles per hour, of the witness Marshall that it was traveling at 15 or 20 miles per hour, of the defendant Heard that it was traveling at 15 miles per hour, and of the witness Barnes that it was traveling at 20 to 25 miles per hour.

2. Ground five of the amended motion for a new trial complains that the court erred in failing to charge without request substantially: "Gentlemen, if you should find from the evidence that the plaintiff's decedent at the time of the occurrence complained of was crossing Mangum Street at a place which was neither a marked or unmarked crosswalk as defined by the ordinance of the City of Atlanta which I have read you, and which appears in the amendment of Williams Bros. Lumber Company allowed to their answer, then, in that event, plaintiff's decedent would be guilty of negligence per se." The court did not err in failing so to instruct the jury. The ordinance pleaded by the defendant Williams Bros. Lumber Company relating to jaywalking is as follows: "Jaywalking prohibited.—Pedestrians shall cross streets only at street intersections or crosswalks and shall not cross street or crosswalk intersections diagonally." The evidence is undisputed that the deceased was crossing Mangum Street at the intersection of Block Place, which is permitted by the above quoted ordinance. It is further contended that there was no unmarked crosswalk at such intersection as defined by § 88-201 of the Atlanta City Code, in that there was no sidewalk on Block Place upon which an unmarked crosswalk could be based. The ordinance pleaded, relating to crosswalks, defines an unmarked crosswalk as "That portion of a roadway ordinarily included within the prolongation or connection of curb and property lines at intersections." Even if there was no sidewalk laid out on Block Place, it will be presumed that there was a property line of a sufficient distance from the curb line to provide space for a sidewalk of average size, and the prolongation of the curb and property lines would constitute enough to denominate an unmarked crosswalk as defined by the ordinance. The evidence did not show that the deceased was not walking within that unmarked crosswalk. Therefore, on the grounds contended by the defendant Williams Bros. Lumber Company, the court did not err in failing to charge the jury as contended by such defendant.

3. Special grounds six and seven complain that the court erred in refusing to charge upon request that, if the jury found that Puritan Mills was negligent and that such negligence combined with that of the defendants to proximately cause the death of the plaintiff's husband, then they should reduce the verdict returned against the defendants by the amount of compensation received by the plaintiff from Puritan Mills' insurer. For a consideration of this question, we shall assume for the sake of argument that, when the 1937 amendment to Code § 114-403 was declared unconstitutional in *Lloyd Adams Inc.* v. *Liberty Mutual Ins. Co.*, 190 *Ga.* 633 (10 S. E. 2d, 46), Code § 114-403 as it stood before such amendment was revived under the rulings in *Wright* v. *Southern Bell Tel. &c. Co.*, 127 *Ga.* 227 (2) (56 S. E. 116), and *Clark* v. *Reynolds,* 136 *Ga.* 817, 824 (5) (72 S. E. 254). Under such Code section, the employer or insurer, as the case may be, could recover from a claimant the amount of compensation paid due to the negligence of a third party where there has been a recovery from the third party by the claimant, and such recovery must be a judicial one and not a settlement between the claimant and the third party. *Travelers Ins. Co.* v. *Luckey,* 46 *Ga. App.* 593 (167 S. E. 907). The Georgia Workmen's Compensation Act grants certain rights and remedies to the employee coming under the act, as against the employer, that were unknown at common law, but Code § 114-103 also takes away from an employee any common-law right that the employee might have had to recover from his employer for an injury caused by the negligence of the employer. Workmen's compensation liability arises out of a contract created by law and not out of any theory of tort, and such liability is not concerned with any negligence of the employer or the employee. Assuming for the sake of argument that the evidence showed that Puritan Mills was negligent and that such negligence combined naturally and proximately with that of the defendant to cause the injuries sued for, we think that the question boils down to whether Puritan Mills could be considered as not being a tort-feasor as to the plaintiff and yet be considered as a joint tort-feasor as to the defendants for the purpose of taking advantage of a payment of compensation under the workmen's compensation law, as between its "joint tort-feasor," Puritan Mills, and

the plaintiff. We think not. Compensation paid under the act is not a settlement of a tort claim. Code § 114-103 takes away from the employee any common-law right of action against the employer for injuries to the employee due to the negligence of the employer, and the legal effect of this fact is to eliminate completely the idea that the employer can be a common-law tort-feasor as to the employee. Therefore, there is no basis upon which the employer can be a joint tort-feasor with a third person as to an employee where both employer and employee are under the act. It is true that, by virtue of Code § 114-403, an employer may escape liability for its negligence where such negligence combines with that of another to produce an injury upon an employee of the employer, and would force the third party to pay damages for injuries which were caused not by his negligence alone, but this is one of the benefits that is granted to an employer coming under the act and compensates for the many instances where the employer must pay compensation for an injury for which he would not have been liable at common law. There is no provision in the act which would allow the employee, in a suit by the employer under Code § 114-403, to recover the amount of compensation paid to the employee, to set up a defense that the jury in the suit by the employee against the third party has made a deduction in its verdict of the compensation received by the employee. Therefore, to allow a jury to make such a deduction could result in forcing the employee to account for the compensation twice, whereas the law, under our assumption as above stated, only requires him to account for it once, and then only to the employer who has paid the compensation and not to a third party. The case of *Atlantic Coast Line R. Co.* v. *Ouzts*, 82 *Ga. App.* 36 (60 S. E. 2d, 770), cited by the plaintiff in error, did not involve workmen's compensation, and therefore is not applicable in the instant case. For foreign authorities on this question see 19 A. L. R. 785; 27 id. 500; 37 id. 844; 67 id. 266; 88 id. 685; 106 id. 1055; 156 id. 460.

4. Special ground eight complains that the court erred in charging the jury that the plaintiff contended that the defendant Williams Bros. Lumber Company was guilty of violating § 88-501 of the Atlanta City Code, in that the driver of the Williams

Bros. Lumber Company truck failed to yield the right of way to the plaintiff's husband, when such allegation had been stricken on demurrer from the petition. The court was reading the petition as being the contentions of the plaintiff and inadvertently overlooked the fact that such paragraph had been stricken on demurrer. The court nowhere in his charge charged the law in reference to such stricken allegation as to the defendant Williams Bros. Lumber Company. It is one thing to charge the contentions of a party and another to charge the law in regard thereto. *Atlanta, K. & N. R. Co.* v. *Gardner*, 122 *Ga.* 82, 93 (8) (49 S. E. 18). No evidence as to this defendant concerning this stricken allegation was introduced nor was such allegation contended for by the plaintiff in the trial of the case. Granting that in a proper case such a charge might be reversible error, we do not feel that in the instant case the defendant Williams Brothers Lumber Company was prejudiced thereby. It has been held that it was not error for the court to charge a contention of a party even though such contention was not supported by evidence (*Barbre* v. *Scott*, 75 *Ga. App.* 524, 534, 43 S. E. 2d, 760, and cases cited), and we feel that the alleged error in the charge in the instant case presents no greater cause for reversal than does a case where a contention is charged and there is no evidence to support it.

5. (a) The plaintiff in error contends that the petition is so loosely drawn as to this defendant that it fails to state a cause of action against it. We do not think that the petition is defective as contended. It alleges that the truck of the plaintiff in error pulled over onto the left-hand side of Mangum Street to go around the parked Anderson-McGriff truck without first ascertaining that the way was clear of oncoming traffic, and that at the time the taxicab struck the plaintiff's husband, the Williams Brothers' truck was still on the left side of the street, and that the rear end of such truck was about 14 feet from and south of the parked truck, at which point the truck of the plaintiff in error had come to a dead stop, etc. The petition was sufficient to allege a cause of action against the plaintiff in error.

(b) It is contended by the plaintiff in error that the alleged acts of negligence of the taxicab driver were sufficient to break the chain of causation between its alleged negligence and the

death of the plaintiff's husband, and to stand as the proximate cause of the death. This contention is fully answered in division 1 (b) of *Anderson-McGriff Co.* v. *Meisel,* ante, and what was said there in reference to Anderson-McGriff Company is applicable to the plaintiff in error in the instant case.

6. The general grounds of the amended motion for a new trial are without merit. The witness Marshall testified in part: "I did see the car that hit Mr. Meisel prior to the time it hit him. The first time I saw this car is where the railroad tracks cross Mangum Street south of the feed mill. It was going approximately 15 miles per hour. It was going north. That would be downhill. It continued downhill as I watched it. It didn't make any movement as it got on downhill with respect to changing direction until it got opposite around the transformer post and swung out to the left. You ask did I at that time notice any other traffic coming up the street from the opposite direction. Well, a red trailer and tractor was coming up the hill. I think it was the tractor and trailer of Williams Brothers Lumber Company. At the time this car first swung out the red tractor-trailer was right below the truck parked to the driveway. I mean the loading door. The Anderson-McGriff truck was parked at the loading door, the building supply door. The red tractor-trailer was on his left of Mangum Street. He was approximately 15-20 feet from the Anderson-McGriff truck when I first noticed it. That was downhill. You ask what happened to this other car that was going downhill, did it continue to get over on the left-hand side of the street or did it continue straight. He stayed on his left and hit the right front of the Anderson-McGriff truck. Before it struck and as it came down the street the Williams Brothers' tractor-trailer was in the slot then. I am talking about the slot between the truck that was Anderson-McGriff's truck and the parked cars that was on the corner. There were cars on the other side of Mangum Street from me. It was full of parked cars. There were cars parked right down there opposite to where the Anderson-McGriff truck was on the other side of the street. They went as far up the street to the power poles, the transformer poles. It was a solid line. . . As this Williams Brothers truck came into what I call the 'slot', there was not room for

the car coming in the opposite direction to go through that slot at the same time the truck was in there. The Williams Brothers' truck came up to this opening with cars parked on the right, on the left with reference to the direction in which he was coming, he blocked the opening. Then the other car approaching in the opposite direction suddenly cut over to the left and rolled down and hit this standing truck."

The defendant Charles Heard testified in part: "I was coming down Mangum Street traveling north and as I crossed the railroad—I was running about 15 miles an hour—and I got near about to where this truck was parked down there on the left and I was traveling right on my side when I looked and seen this truck coming and I throwed on my brakes and cut to the left to try to avoid hitting him, and when I got down there to the end of this other truck Mr. Meisel was crossing the street. You ask this truck that I am talking about, was it parked in the street sticking out partly across Mangum Street. Yes; he was backed up to the dock. At the time I first saw the truck coming towards me, it was coming from around this other truck that was parked to the dock. He made a swing to the left over on my side and he was coming on my side and I tried to cut in front of it to avoid hitting him. After he came and cut to his left and started to pass this truck I did not have room to cut over to the right and go on by there because cars was parked all on the side. When I cut over to the left the brakes busted and my car went down to the end of this truck was parked to the dock and struck the right front wheel. . . When I came into contact with or hit Mr. Meisel, the other truck that I said swung around was just coming right through that place at that time. If he hadn't been coming through there I could have went on through. . . You state, at the time I came up there and hit why he was completely blocking my side of the road. He was on my right side of the road."

The jury was authorized to find that, under the circumstances, the plaintiff in error was negligent and that such negligence combined naturally and proximately with that of the other defendants in causing the death of the plaintiff's husband.

The special demurrers are without merit.

The court did not err in overruling the demurrers to the petition, or in overruling the amended motion for a new trial.

*Judgment affirmed on the main bill of exceptions. Cross-bill of exceptions dismissed. Sutton, C.J., and Worrill, J., concur.*