**Willie Lee HUDSON, Plaintiff,**

**v.**

**UNION CARBIDE CORPORATION, Defendant.**

**Civ. A. C85–3851A.**

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 25, 1985.

Thomas William Malone, Malone & Percilla, Atlanta, Ga., Phillip R. Raymond, Malone & Percilla, Macon, Ga., for plaintiff.

Jonathan M. Engram, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

Presently pending in this products liability action is defendant's motion for summary judgment. Jurisdiction exists pursuant to 28 U.S.C. § 1332.

**CASE HISTORY**

This action was initiated in the Fulton County Superior Court of Georgia on March 23, 1984. *Hudson v. Union Carbide Corp.*, No. D–08596 (Fulton County, Ga., Super.Ct.) (Eldridge, J.). Originally, plaintiff named as defendants Union Carbide Corporation, which has its principal place of business in Connecticut, and VMC Products, Inc., d/b/a Rebuilders Supply Company of Atlanta, which has its principal place of business in Georgia.

On January 2, 1985, the Superior Court granted plaintiff's motion for partial summary judgment and denied each of the defendant's motions for partial summary judgment on the issue of defendants' entitlement to set-off of workers' compensation benefits paid to plaintiff. Both defendants directly appealed the grant of partial summary judgment to plaintiff and made applications for interlocutory appeal to the Georgia Supreme Court from the denial of their motions for partial summary judgment. The applications for appeal were granted on February 5, 1985.

After briefs were filed by all parties and oral argument was heard by the Georgia Supreme Court (on May 8, 1985), but before the appeal was decided, plaintiff settled its suit with defendant VMC Products and voluntarily dismissed VMC Products from this action on August 15, 1985. Defendant Union Carbide, still before the Georgia Supreme Court decided the issue on appeal, then removed this action to federal district court on August 29, 1985, on the basis of diversity of citizenship. *See* 28 U.S.C. §§ 1441 and 1446(b).

On September 12, 1985, defendant Union Carbide filed the motion for summary judgment which is now pending. With this motion, defendant asks this court to decide the issue which was on appeal to the Georgia Supreme Court prior to removal—that is, defendant asks this court to set aside the January 2, 1985 Order of the Superior Court and rule that defendant is entitled to have the amount of workers' compensation benefits paid to plaintiff set-off from any verdict plaintiff might receive in this action or, alternatively, rule that Ga. Off'l Code Ann. § 34–9–11, to the extent it bars a suit for contribution and/or indemnification against an employer under Georgia's Workers' Compensation Act, is unconstitutional if there is no such right to set-off.

**FACTS**

The facts relevant to the motion before the court are relatively straightforward.

Plaintiff sustained injuries when a product manufactured by defendant Union Carbide ignited and caused a fire. At the time of the incident, plaintiff was working for Wheelers Manufacturing Company, Inc. He accordingly was paid workers' compensation benefits by his employer for his injuries.

The parties have stipulated for the purposes of defendant's motion for summary judgment that plaintiff's employer was

negligent and that this negligence combined with the alleged negligence of defendant to proximately contribute to plaintiff's injuries. (The court notes that apparently there is some evidence that plaintiff's employer was in fact negligent with regard to plaintiff's injuries; defendant states that the employer was cited for several OSHA violations following the incident in question, including one for the specific apparatus which was being used by plaintiff at the time of the fire.)

## DISCUSSION

### A. Right to set-off

The first question raised by defendant's motion for summary judgment, simply stated, is whether under Georgia law a tortfeasor is entitled to set-off from a verdict obtained against it/him/her the amount of workers' compensation benefits paid to the injured plaintiff by his or her employer when the employer's negligence in fact contributed to the plaintiff's injuries.[1]

The Georgia Supreme Court acknowledged the validity of this question in *Sargent Industries, Inc. v. Delta Airlines, Inc.*, 251 Ga. 91, 303 S.E.2d 108 (1983), when it stated in a footnote that:

[even though an employer is immune from third-party impleader under Georgia's Workmen's Compensation Act], an argument could still be made that if the employer's negligence in fact contributed to the employee's injury, the defendant in the tort action filed by the employee is nonetheless entitled to set off the amount of workers' compensation paid by the employer from the verdict....

*Id.* at 94 n. 1, 303 S.E.2d 108 (citations omitted). However, not only was this statement *dicta*, the Georgia Supreme

Court did not indicate whether it deemed the argument meritorious and no Georgia court has addressed the issue since. Thus, this court is left to speculate how a Georgia court would decide the set-off question pending before it.[2]

For the reasons discussed below, the court concludes that a Georgia court, if faced with the question pending, would hold that a defendant tortfeasor is *not* entitled to have the amount of workers' compensation paid to the plaintiff employee set-off from the verdict returned against it/him/her even if the evidence at trial establishes that the negligence of the plaintiff's employer contributed to plaintiff's injury; accordingly, that is what this court holds. *Accord Hardigree v. Wilson Trailer Co.*, No. C84–1453A (N.D.Ga. Jan. 7, 1985) (Evans, J.) (unpublished). *Contra Carter v. Interstate Truck Leasing, Inc.*, No. C84–730A (N.D.Ga. July 8, 1985) (Moye, J.) (unpublished); *Cofield v. Young Industries, Inc.*, No. C82–2276A (N.D.Ga. Sept. 12, 1984) (Forrester, J.) (unpublished).

At the center of the instant dispute is the continued vitality of *Williams Brothers Lumber Co. v. Meisel*, 85 Ga.App. 72, 68 S.E.2d 384 (1951), and its progeny. In *Meisel* the Georgia Court of Appeals held that an employer which has paid workers' compensation benefits cannot be considered a joint tortfeasor with the tort defendant in an action brought by the injured employee and thus that the verdict returned against the tortfeasor cannot be reduced by the amount of workers' compensation received by the employee even if the employer's negligence combined with the negligence of the tort defendant to cause the plaintiff

---

**1.** Whether under Georgia law a tortfeasor is entitled to set-off from a verdict obtained against it/him/her the amount of workers' compensation benefits paid to the injured plaintiff by his or her employer when the employer's negligence did *not* contribute to the plaintiff's injuries was recently answered in the negative by the court. *See Phillips v. Liberty Mutual Ins. Co.*, No. C83–2226A (N.D.Ga. Sept. 25, 1985) (Hall, J.). *Contra Carter v. Interstate Truck Leasing, Inc.*, No. C84–730A (N.D.Ga. July 8, 1985) (Moye, J.) (unpublished).

**2.** Of course, if defendant had not removed this action to federal district court when it did, the Georgia Supreme Court would have ruled on the issue and speculation by this court (and other federal courts) would have been avoided, obviously the preferred course of events from this court's perspective. Defendant had the right to remove this action under 28 U.S.C. § 1446(b) as it is now written, however, and this court must accept the situation.

employee's injuries.[3] *Id.* at 74–5, 68 S.E.2d 384.

At the time this case was decided, under Georgia workers' compensation law an employer had a right to recover the amount of workers' compensation paid to the employee if the employee recovered from a third-party tortfeasor, Ga.Code Ann. § 114–403, and the *Meisel* court relied in part on this in its decision:

> There is no provision in the [Georgia Workmen's Compensation Act] which would allow the employee, in a suit by the employer under Code § 114–403, to recover the amount of compensation paid to the employee, to set up a defense that the jury in the suit by the employee against the third party has made a deduction in its verdict of the compensation received by the employee. Therefore, to allow a jury to make such a deduction would result in forcing the employee to account for the compensation twice, whereas the law ... only requires him to account for it once, and then only to the employer who has paid the compensation and not to a third party....

*Id.* at 75, 68 S.E.2d 384. With the 1972 repeal of the employer's "statutory lien" (and the employer's right of subrogation), Ga.Laws 1972, pp. 3–4, the *"Meisel* rule" must be reexamined. *See Aretz v. United States,* 456 F.Supp. 397, 407 (S.D.Ga.1978) ("If a right of subrogation by the employer [does] not exist, th[e] argument [for abandoning *Meisel* ] might have some foundation."), *cited in Sargent Industries, Inc., supra,* 251 Ga. at 94 n. 1, 303 S.E.2d 108.

Upon careful examination, however, the court finds that the *"Meisel* rule" is still well-founded notwithstanding the current invalidity of the argument that an injured employee may have to account twice for the workers' compensation benefits paid if the benefits are deducted from the jury verdict in the employee's suit against the third-party tortfeasor. *Accord Hardigree v. Wilson Trailer Co., supra.* The reasoning of the Georgia Court of Appeals in *Meisel* involved more than just the "double accounting" issue quoted above and, in fact, that issue was only mentioned after the court discussed the nature of workers' compensation benefits and the elimination of the employee's common law right of action against his or her employer. *Meisel, supra,* 85 Ga.App. at 74–5, 68 S.E.2d 384. The court finds that this discussion reveals why the *"Meisel* rule" is still controlling.

The reasoning of the *Meisel* court was as follows:

> Workmen's compensation liability arises out of a contract created by law and not out of any theory of tort, and such liability is not concerned with any negligence of the employer or the employee. Assuming for the sake of argument that the evidence showed that [the employer] was negligent and that such negligence combined naturally and proximately with that of the defendant to cause the injuries sued for, we think that the question boils down to whether [the employer] could be considered as not being a tortfeasor as to the plaintiff and yet be considered as a joint tort-feasor as to the defendants for the purpose of taking advantage of a payment of compensation under the workmen's compensation law, as between its "joint tortfeasor," [the employer], and the plaintiff [the injured employee]. We think not. *Compensation paid under the act is not a settlement of a tort claim. Code § 114–103 [now Ga.Off'l Code Ann. § 34–9–11] takes away from the employee any common-law right of action against the employer for injuries to the employee due to the negligence of the employer, and the legal effect of this fact is to*

**3.** Strictly speaking, the *"Meisel* rule" is not simply an application of the "collateral source rule" of tort law since the collateral source rule is invoked only when the source of the collateral payment is not a joint tortfeasor with the defendant tortfeasor. *See McGlohon v. Ogden,* 251 Ga. 625, 625 n. 1, 308 S.E.2d 541 (1983). However, because *Meisel* held that in the workers' compensation context, an employer who is jointly negligent with a third-party tortfeasor *cannot be considered* a joint tortfeasor, the *Meisel* rule is sometimes equated with the collateral source rule. *See, e.g., Aretz v. United States,* 456 F.Supp. 397, 407 (S.D.Ga.1978).

*eliminate completely the idea that the employer can be a common-law tortfeasor as to the employee.* Therefore, there is no basis upon which the employer can be a joint tort-feasor with a third person as to an employee where both employer and employee are under the act. . . .

*Id.* (emphasis added). The court continued: *It is true that, by virtue of Code § 114–403* [now Ga.Off'l Code Ann. § 34–9–11], *an employer* may escape liability for its negligence where such negligence combines with that of another to produce an injury upon an employee of the employer, and *would force the third party to pay damages for injuries which were caused not by his negligence alone, but this is one of the benefits that is granted to an employer coming under the act* and compensates for the many instances where the employer must pay compensation for an injury for which he would not have been liable at common law. . . .

*Id.* at 75, 68 S.E.2d 384 (emphasis added).

The repeal of an employer's statutory lien and right of subrogation does not weaken this reasoning. There continues to be no basis upon which the payment of workers' compensation benefits can be considered a payment in settlement of a tort claim and thus deducted from a verdict rendered against a third-party tortfeasor, even assuming that the evidence showed that the employer's negligence combined with that of the tortfeasor to cause the employee's injuries.

Notwithstanding the strength of *Meisel,* there are other reasons which weigh in favor of not establishing a right to set-off workers' compensation benefits. As Judge Eldridge of the Fulton County Superior Court said in his January 2, 1985 Order, creating a right of set-off would "open the proverbial Pandora's box of legal problems." Some of these problems are listed below, borrowing from Judge Eldridge's Order:

(1) How would the plaintiff employee rebut the tortfeasor's evidence of employer negligence when the employer's interests are aligned with the tortfeasor (such as where the tortfeasor is the employer's insurer or is an important supplier of the employer)? [4]

(2) How would the employer's negligence be considered for the purposes of comparative negligence? Would the comparative negligence doctrine even apply? Would the plaintiff employee's negligence be imputed to the employer? Would the employer's negligence be imputed to the employee? What if the employer and the parties were equally negligent? [5]

(3) Would the verdict be set-off by the entire workers' compensation payment regardless of how negligent the employer was or would it be set-off by only a percentage of the workers' compensation benefits based on the employer's negligence in comparison to the parties' negligence? If the workers' compensation benefits did not cover that percentage of the verdict attributed to employer negligence, would the defendant tortfeasor have to pay the difference or would the plaintiff employee's recovery be short that difference?

(4) How would future compensation benefits affect the verdict? Would the defendant tortfeasor be allowed to set-off only those benefits paid at the time of trial? Would a continu-

**4.** Absent the threat of a suit for contribution or indemnification, *see Ga. State Tel. Co. v. Scarboro,* 148 Ga.App. 390, 251 S.E.2d 309 (1978) (an employer who has paid workers' compensation benefits cannot be sued for contribution as a joint tortfeasor), the employer may not have an

interest in establishing its/his/her lack of negligence.

**5.** For an example of how one state has answered these questions, see *Tucker v. Union Oil Co. of Cal.,* 100 Idaho 590, 603 P.2d 156 (1979).

ance of trial be proper until the maximum set-off amount had accrued?

(5) If the verdict included damages for future medical expenses and future lost wages, should future workers' compensation obligations be set-off and, if so, on what percentage basis?

(6) What would be set-off if the employer had been passively negligent and the defendant tortfeasor had been actively negligent, and vice versa? What would be set-off if the defendant and the employer were both actively negligent or both passively negligent? What would be set-off if the plaintiff's active or passive negligence were considered?

(7) If the plaintiff employee sued the third-party tortfeasor for only pain and suffering, would the defendant be entitled to set-off of workers' compensation benefits?

(8) If an injured employee sues for pain and suffering and the parent or spouse sues for loss of services, would the defendant tortfeasor be entitled to set-off in one or both suits, and if in both suits, would the compensation benefits be apportioned?

(9) Would compensation death benefits be set-off against a verdict for the full value of the life of the deceased employee?

(10) If the employer was at fault, but the family of the deceased employee was not entitled to compensation benefits, would the defendant be entitled to set-off the benefits that would have been paid?

(11) If the employer was at fault but did not voluntarily pay benefits and the employee failed to timely file a claim so as to constitute a bar, would the defendant be entitled to set-off the benefits that should have been paid?

(12) How would the court instruct the jury to avoid confusion and prejudice to the plaintiff employee? What verdict form would be used so that all determinations relevant to set-off are clear? Would the jury have to be told the amount of workers' compensation received or could the court effectuate the set-off after the verdict is returned?

*See Hudson v. Union Carbide Corp.,* No. D–08596, slip op. at 3–9 (Fulton County, Ga., Super.Ct. Jan. 2, 1985) (Eldridge, J.).

In light of the confusion, uncertainty, and injustice which would result from recognizing a right to set-off workers' compensation, in addition to the lack of a legal basis for a right to set-off, the court concludes that a tortfeasor has no right to set-off the amount of workers' compensation paid to the plaintiff employee even where the employer's negligence contributed to the employee's injuries.

The court does not find that footnote 1 of *Sargent Industries, Inc., supra,* mandates a different result, contrary to what defendant maintains. This footnote was *dicta* and merely said that "an argument could . . . be made" that a tortfeasor is entitled to set-off of workers' compensation. The Georgia Supreme Court was apparently concerned about the inequities resulting from not holding a negligent employer to the principle of contribution, but did not reach a conclusion as to whether a set-off of workers' compensation could be implemented to resolve those inequities. Obviously the issue had not been briefed for the court since it was not relevant to the *Meisel* case and the court's comment cannot be considered indicative of how the court would feel if it were presented with legal argument. *Accord Hardigree v. Wilson Trailer Co., supra. But see Carter v. Interstate Truck Leasing, Inc., supra; Cofield v. Young Industries, Inc., supra.*

Even the *Sargent Industries, Inc.* court's citation to *Aretz v. United States, supra,* does not convince the court that the Georgia Supreme Court would hold other than what this court holds today. The *Aretz* court's comment regarding the *Meisel* rule—that there might be some foundation to the argument that the *Meisel* rule is no longer valid with the repeal of the em-

ployer's right of subrogation under Georgia's workers' compensation laws—was *dicta* and is inconclusive as to how the court would have resolved the issue had it considered all the issues carefully. Citation to this case by the Georgia Supreme Court simply indicates that that court would conclude that the rule needed to be abandoned upon reconsideration.

The court is also not persuaded by defendant's citation to foreign authorities which recognize a right to set-off workers' compensation benefits. The states which allow a set-off of workers' compensation benefits do so on the theory that a negligent employer, who in those states has a right of subrogation or a right to recover the amount of workers' compensation paid if the employee recovers from a third-party tortfeasor, should not be allowed to profit from its/his/her own negligence. *See, e.g., Santisteven v. Dow Chemical Co.,* 362 F.Supp. 646 (D.Nev.1973), *aff'd* 506 F.2d 1216, 1220 (9th Cir.1974) (applying Nevada law); *Tucker v. Union Oil Co. of California,* 100 Idaho 590, 603 P.2d 156 (1979); *Witt v. Jackson,* 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961); *Lovette v. Lloyd,* 236 N.C. 663, 73 S.E.2d 886 (1953). This theory has no relevance in Georgia because the employer will not profit from its negligence if the third-party tortfeasor's verdict is not reduced by the amount of workers' compensation paid, there being no right of subrogation or right to recover the compensation paid if the employee prevails in a suit against the third-party tortfeasor.[6]

The fact that plaintiff may recover twice for his injuries also does not sway the court. Georgia does not have an absolute bar to "double recovery" as evidenced by the collateral source rule, which in effect allows a plaintiff double recovery if he or she recovers from a tortfeasor and is compensated by a non-tortfeasor as well. *See*

*McGlohon v. Ogden,* 251 Ga. 625, 625 n. 1, 308 S.E.2d 541 (1983). That an injured employee may recover twice for his or her injuries is the result of there being no right of subrogation nor right to reimbursement for employers and the no-fault nature of workers' compensation payments. The court cannot alter this result absent a sound legal basis.

■ Finally, the court does not find the refusal to recognize a right to set-off workers' compensation benefits deprives defendant, and others effected by this ruling, of constitutional rights guaranteed under either the United States Constitution or the Constitution of Georgia. Defendant has no constitutional right to have a verdict rendered against it reduced by the amount of workers' compensation benefits received by plaintiff; defendant is not being deprived of a right given to others—there is no statutory or common law right to have a tort verdict reduced by amounts paid to the plaintiff not in settlement of the tort claim involved.

Just as the *Meisel* court did, this court recognizes the inequities of forcing a tortfeasor to pay all the damages for injuries which were not caused by its/his/her negligence alone, but finds that these inequities must be resolved by the legislature and not by the courts.

B. *Constitutionality of Ga.Off'l Code Ann. § 34–9–11*

■ The second question raised by defendant's motion for summary judgment is whether Ga.Off'l Code Ann. § 34–9–11 (the exclusive remedy provision of Georgia's Workmen's Compensation Act), to the extent it has been construed to bar a suit for contribution and/or indemnification against an employer under Georgia's Workmen's Compensation Act,[7] is unconstitutional if

---

**6.** Defendant also cites to the rule of Kansas as support for a right to set-off. Kansas would hold the third-party tortfeasor liable for only its/his/her proportion of the negligence under the state's comparative negligence statute. *See Scales v. St. Louis-San Francisco R. Co.,* 582 P.2d 300, 2 Kan.App.2d 491 (1978), *citing Brown v.*

*Keill,* 224 Kan. 195, 580 P.2d 867 (1978). The Kansas rule would not work in Georgia because Georgia has joint and several liability.

**7.** *See Ga. State Tel. Co. v. Scarboro, supra; Ga. Power Co. v. Diamond,* 130 Ga.App. 268, 202 S.E.2d 704 (1973); *Central of Ga. R. Co. v.*

there is no right to set-off the workers' compensation benefits paid to an injured employee when the negligence of the plaintiff employee's employer contributed to the employee's injuries.

Defendant urges the court to answer this question in the affirmative. In defendant's words:

> [W]here, as here, O.C.G.A. § 34–9–11 discriminates against an alleged tortfeasor by denying it a substantive right of contribution or indemnification elsewhere existing in the tort system, and without providing it with a reasonable substitute for such rights, the exclusive remedy provision must be stricken as unconstitutional.

(Exhibit A to defendant's brief, p. 20).

The court again rules against defendant. Section 34–9–11 is not unconstitutional under either the United States Constitution or the Constitution of Georgia. There is a rational basis for abrogating a tortfeasor's right to contribution and/or indemnification from an employer who has paid workers' compensation benefits: the legislature, balancing the competing interests involved, does not want the employer's liability to exceed his/her/its liability under the workers' compensation law, a liability intended to result in the most efficient and certain rehabilitation of employee injuries without regard to fault. If there were a right of contribution and/or indemnification from the employer, the employer would have to · pay more than that required by the Workmen's Compensation Act (there being no legal basis for setting-off the workers' compensation paid by the employer and there being no right of subrogation nor right to reimbursement from the employee on the part of the employer).[8]

The inequities which result from not holding an employer under the workers' compensation scheme to the principle of contribution must be resolved by the legislature and not by the courts.

**CONCLUSION**

In sum, the court DENIES defendant's motion for summary judgment, finding that defendant is not entitled to a set-off of the workers' compensation benefits received by plaintiff.

---

*Lester,* 118 Ga.App. 794, 165 S.E.2d 587 (1968). *See also Coleman v. General Motors Corp.,* 386 F.Supp. 87 (N.D.Ga.1974) (applying Georgia law); *O'Steen v. Lockheed Aircraft Corp.,* 294 F.Supp. 409 (N.D.Ga.1968) (applying Georgia law).

**8.** *But see Sunspan Eng'g and Constr. Co. v. Spring-Lock Scaffolding Co.,* 310 So.2d 4, 8 (Fla. 1975) (precluding a third-party tortfeasor from seeking contribution from a negligent employer

is "an arbitrary and capricious innovation without any rational basis furthering any overpowering public necessity...." in violation of the state and federal constitutions); *Carlson v. Smogard,* 298 Minn. 362, 215 N.W.2d 615 (1974) (abrogation of third-party tortfeasor's common law right to indemnification from a negligent employer without a legitimate objective and without providing a reasonable substitute is unconstitutional).